**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOHN GROFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 8:25-cv-02031-DLB |
| | ) | |
| V. | ) | **(JURY TRIAL REQUESTED)** |
| | ) | |
| MARRIOTT INTERNATIONAL, INC., | ) | |
| WESTMONT HOSPITALITY GROUP, | ) | |
| INC., JOHN DOES 1–10 | ) | |
| (fictitious names), and ABC | ) | |
| ENTITIES 1–10 (fictitious entities), | ) | |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

Plaintiff, JOHN GROFF, by way of Complaint against the Defendants, MARRIOTT INTERNATIONAL, INC., a Delaware corporation with its principal place of business in Maryland, and WESTMONT HOSPITALITY GROUP, INC., a Texas corporation with its principal place of business in Texas, and JOHN DOES 1–10 (fictitious names), and ABC ENTITIES 1–10 (fictitious entities) (collectively, "Defendants"), jointly, severally, or in the alternative, hereby states as follows:

<u>**PARTIES**</u>

1. At all times relevant herein, Plaintiff JOHN GROFF is an adult resident citizen of the State of New Jersey.

2. Defendant MARRIOTT INTERNATIONAL, INC. ("Marriott") is a Delaware corporation with its principal place of business located at 7750 Wisconsin Avenue, Bethesda, Maryland 20814. Marriott's registered agent for service of process in Maryland is CSC–Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 820, Baltimore, Maryland 21202.

3.      Defendant WESTMONT HOSPITALITY GROUP, INC. ("Westmont") is a Texas corporation with its principal place of business located at 5847 San Felipe Street, Suite 4600, Houston, Texas 77057. Westmont's registered agent for service of process is Capitol Corporate Services, Inc., 1501 South Mopac Expressway, Suite 220, Austin, Texas 78746.

## JURISDICTION & VENUE

4.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court also has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to Plaintiff's claims within the Court's original jurisdiction that they form part of the same case or controversy.

6.      Venue is proper in the District of Maryland under 28 U.S.C. § 1391(b)(1)–(2) because Defendant Marriott International, Inc. maintains its principal place of business in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District, including those governed by the Marriott Bonvoy customer loyalty agreement, which specifies jurisdiction and venue in the state and federal courts of Maryland.

## FACTUAL BACKGROUND

7.      At all times relevant, Plaintiff John Groff was a longstanding and loyal customer of Marriott-branded hotels and properties managed or operated by Defendants, frequently lodging at such establishments and maintaining the highest level of elite membership in the Marriott Bonvoy loyalty program.

8.      On or about November 30, 2023, Mr. Groff booked and stayed at the Westin Mount Laurel Hotel (hereinafter, the "Westin Hotel"), located at 555 Fellowship Road, Mount Laurel, New Jersey

08054, checking out on or about December 4, 2023.

9.      Following that stay, and at a date and time presently unknown to Plaintiff, Defendant Westmont Hospitality Group, Inc., which owns or operates the Westin Hotel, arbitrarily and without proper cause reported to Marriott that Plaintiff had engaged in an alleged verbal dispute with hotel staff. Plaintiff denies that he engaged in any abusive, hostile, or inappropriate conduct, and no contemporaneous guest complaints, police reports, or incident reports substantiate Westmont's claim.

10.      Westmont made this report with the effect, and intent, of interfering with Plaintiff's longstanding contractual and business relationship with Marriott and his participation in the Marriott Bonvoy loyalty program.

11.      On December 11, 2023, without notice or explanation, Defendant Marriott International, Inc. deducted 643,412 loyalty rewards points from Plaintiff's Marriott Bonvoy account, Account No. 207578024, and inserted the notation "Fraud Remaining Balance Remove" on his account records.

12.      Plaintiff was at that time an Ambassador Elite member—the highest published status level in the Bonvoy program—reflecting Plaintiff's significant financial expenditures and years of loyalty to Marriott. Plaintiff had earned his elite status and rewards points through repeated stays, including business-related events held at Marriott properties, such as Lento Law Group's yearly holiday party hosted at the Westin Mount Laurel for consecutive years.

13.      At no time prior to the deduction did Marriott notify Plaintiff that his points were at risk of forfeiture, nor did Marriott provide Plaintiff with an opportunity to contest or appeal the adverse action. Plaintiff only discovered the deduction after independently contacting Marriott to inquire about his account.

14.      Likewise, at no time did Westmont notify Plaintiff that it intended to interfere with his

Bonvoy account by transmitting negative and unfounded allegations to Marriott. Plaintiff was never told by Westmont that he had been "banned" from the Westin Mount Laurel; rather, he learned this after the fact from Marriott's customer service.

15.    Plaintiff has no knowledge of any alleged "fraud" for which he was being punished by Marriott's unilateral deduction of his accumulated points. Marriott has not produced any documentation substantiating the notation "Fraud Remaining Balance Remove," nor is that phrase defined in the Marriott Bonvoy Terms and Conditions.

16.    Defendants have failed and continue to refuse to provide any clear explanation for their conduct. As a result of Defendants' wrongful and arbitrary actions, Plaintiff has been deprived of rewards points and benefits with a fair market value in excess of $75,000, suffered reputational harm through the implication of "fraud," and lost the benefit of the bargain he earned through his loyal patronage of Marriott properties.

17.    At no time did the Plaintiff engage in any of the following acts or omissions:

A. Acted in a manner inconsistent with applicable laws, regulations, ordinances; ordinances;

B. Failed to pay any hotel or other bill when due to the Company or a Participating Property or failed to fulfill a Marriott Vacation Club, Marriott Grand Residence Club, Sheraton Vacation Club, Westin Vacation Club, or The Phoenician Residences, a Luxury Collection Residence Club, Scottsdale, financial obligation;

C. Acted in an inappropriate, fraudulent, abusive or hostile manner;

D. Breached or violated any of these Program Rules or the Website Terms of Use;

E. Fraudulently claimed eligibility to earn benefits through Marriott BonvoyTM Events; or

F. Engaged in any misconduct or wrongdoing in connection with the Loyalty Program

including, without limitation, with respect to Points, Elite Night Credit, Award usage, or any other Loyalty Program Member benefits.

G.     Violated any of the Program Rules,

H.     Failed to pay any bills or accounts due to the Company or a Participating Property or any ownership related fees owed to Marriott Vacation Club properties, Marriott Grand Residence Club, Sheraton Vacation Club, or Westin Vacation Club properties, or The Phoenician Residences, a Luxury Collection Residence Club, Scottsdale,

I.     Acted in a manner inconsistent with applicable law, regulations or ordinances,

J.     Engaged in any misconduct or wrongdoing in connection with the Marriott Bonvoy Loyalty Program, including without limitation, involving Point credit, Mile credit, Award use, or Member benefits,

K.     Engaged in abusive, fraudulent, inappropriate, or hostile conduct in connection with the Marriott Bonvoy Loyalty Program, the Participating Properties or their guests or employees, or the Company or its employees.

17.1.   At all times material hereto, the Defendants failed to provide the terms and requirements of their Marriott Bonvoy loyalty program in a manner that was easily accessible, clearly explained, and fully made known to the Plaintiff.

17.2.   At all times material hereto, the Defendants' advertising and promotion of the Marriott Bonvoy loyalty program failed to also advise of the restrictions and limitations of the program, thus misleading Plaintiff as to the benefits of the program.

17.3.   At all times material hereto, the Defendants' advertising and promotion of the Marriott Bonvoy loyalty program deceived Plaintiff into believing that the points he earned would be honored and would not be withdrawn for spurious and unproved allegations.

<u>**COUNT ONE**</u>

**CONSUMER FRAUD**

**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**

**(As to Defendant Marriott)**

18.     Plaintiff repeats and realleges all factual allegations contained in the Complaint as if fully set forth herein.

19.     Hotel guest services and customer loyalty programs, including the Marriott Bonvoy program, are covered by the Maryland Consumer Protection Act, Md. Code, Com. Law §§ 13-101 et seq. (the "Act"). The Act protects consumers from unfair, abusive, and deceptive trade practices. The types of goods and services promised to Plaintiff—lodging services, loyalty points redeemable for hotel stays, and elite membership benefits—constitute "merchandise" or "services" within the scope of the Act, and Plaintiff was a "consumer" at all relevant times.

20.     Defendant Marriott represented to Plaintiff, through its published Bonvoy Terms & Conditions, promotional materials, and account statements, that points earned through stays were valid rewards redeemable for lodging and other benefits, and that Ambassador Elite members were entitled to enhanced benefits and privileges. Marriott further represented that loyalty points would accrue and be redeemable so long as Plaintiff complied with program rules.

21.     Defendant Marriott failed to disclose a material fact—namely, that Marriott reserved the ability to remove all of a member's accumulated points and annotate the account with an unsubstantiated "fraud" designation, without notice, explanation, or investigation, even absent any fraudulent conduct. This omission was deceptive and misleading because it deprived Plaintiff of the ability to make an informed decision about whether to continue to stay at Marriott properties and forgo competitors.

22.     Defendant Marriott affirmatively misled Plaintiff when, on December 11, 2023, it entered the notation "Fraud Remaining Balance Remove" on Plaintiff's account and deducted 643,412 points, thereby falsely implying that Plaintiff had engaged in fraudulent conduct. Marriott never disclosed the nature of the alleged fraud, never provided supporting evidence, and never gave Plaintiff an opportunity to contest or cure the allegation.

23.     Plaintiff reasonably relied on Marriott's representations that points were legitimate, earned rewards of tangible value, and that his Ambassador Elite membership would confer specific benefits. In reliance on those representations, Plaintiff spent substantial sums of money at Marriott properties over many years and declined to stay with Marriott's competitors.

24.     Marriott's conduct constitutes unfair, abusive, and deceptive trade practices within the meaning of Md. Code, Com. Law § 13-301, including false or misleading representations, failure to state material facts, and disparagement of Plaintiff through the false implication of fraud.

25.     As a direct and proximate result of Marriott's misrepresentations, omissions, and unfair practices, Plaintiff has suffered ascertainable monetary losses in excess of $75,000, including but not limited to the fair market value of the 643,412 points wrongfully deducted, the lost benefits of his Ambassador Elite status, reputational harm, and the loss of use of points and privileges he reasonably expected to redeem.

26.     Plaintiff seeks all remedies available under the Act, including compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT TWO

### BREACH OF CONTRACT

**(As to Defendant Marriott)**

27.     Plaintiff repeats and realleges all factual allegations contained in this Complaint as if fully set forth herein.

28.     At all times relevant, Plaintiff and Defendant Marriott were parties to an express written contract, namely, the Marriott Bonvoy Terms and Conditions, which governed Plaintiff's membership in the loyalty program, his Ambassador Elite status, and his right to accrue and redeem points earned through qualifying stays and expenditures.

29.     Plaintiff fully performed his contractual obligations by booking and paying for hotel stays and related services at Marriott-branded properties, thereby earning and accumulating 643,412 loyalty rewards points and maintaining his Ambassador Elite membership.

30.     Defendant Marriott breached the express contract by unilaterally deducting all 643,412 points from Plaintiff's account and annotating his record with "Fraud Remaining Balance Remove," without cause, without notice, without investigation, and without providing Plaintiff the opportunity to contest the alleged violation. No provision of the Terms and Conditions authorizes Marriott to arbitrarily label a member as having committed "fraud" absent substantiated evidence.

31.     Further, even if Marriott retained contractual discretion to suspend or terminate an account, the implied covenant of good faith and fair dealing required Marriott to exercise that discretion in a fair, honest, and non-arbitrary manner. Marriott's actions—revoking Plaintiff's earned benefits without investigation or substantiation, and falsely associating Plaintiff with fraud—constitute a breach of that covenant.

32.     Plaintiff reasonably relied on Marriott's contractual promises and representations that his earned points and Ambassador Elite benefits would remain available so long as he complied with the program rules. Plaintiff paid valuable consideration by repeatedly choosing Marriott over its

competitors, incurring substantial expenditures in reliance on the loyalty program's contractual protections.

33.    As a direct and proximate result of Marriott's breach of both the express contract and the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in excess of $75,000, including the loss of 643,412 points, the deprivation of Ambassador Elite benefits, reputational harm, and the lost value of expenditures made in reliance on Marriott's contractual commitments.

## COUNT THREE

### CONVERSION

### (As to Defendant Marriott)

34.    Plaintiff repeats and realleges all factual allegations contained in this Complaint as if fully set forth herein.

35.    Plaintiff earned 643,412 Marriott Bonvoy loyalty points through frequent and regular paid stays at Marriott-branded properties, including business and personal travel. These points represented a form of valuable credit that Plaintiff was contractually entitled to redeem for hotel stays, upgrades, and other tangible benefits.

36.    Although Marriott's Terms and Conditions state that points are the property of Marriott, Plaintiff had a vested, contractual right to use and redeem the points he had earned. The points held ascertainable monetary value, as they could be redeemed for specific goods and services in

the hospitality marketplace and were routinely marketed and represented by Marriott as valuable consumer rewards.

37.     On December 11, 2023, Defendant Marriott unilaterally and without justification deducted all 643,412 of Plaintiff's earned points and placed a "Fraud Remaining Balance Remove" notation on his account, thereby depriving Plaintiff of the ability to use or redeem the points.

38.     Marriott's wrongful appropriation of Plaintiff's points, earned through his financial expenditures and reliance on Marriott's representations, constitutes conversion under Maryland law. Plaintiff had a right to immediate use of the points, and Marriott exercised dominion and control over them in a manner inconsistent with Plaintiff's rights.

39.     In the alternative, to the extent this Court finds that Plaintiff did not hold a possessory interest in the points sufficient to support a conversion claim, Plaintiff pleads unjust enrichment. Marriott has been unjustly enriched by retaining the full benefit of Plaintiff's expenditures, while stripping him of the promised rewards and falsely branding him with a "fraud" designation.

40.     Allowing Marriott to retain both the monetary value of Plaintiff's stays and the associated points would result in inequity and unjust enrichment, as Plaintiff paid for accommodations in reliance on Marriott's loyalty program representations but was denied the bargained-for benefit of redeemable rewards.

41.     As a direct and proximate result of Marriott's conduct, Plaintiff has suffered damages in excess of $75,000, including the loss of the 643,412 points, the deprivation of Ambassador Elite benefits, reputational harm, and lost business opportunities associated with his loyalty program participation.

## COUNT FOUR

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

**(As to Defendant Westmont)**

42.     Plaintiff repeats and realleges all factual allegations contained in this Complaint as if fully set forth herein.

43.     Plaintiff had a valid and enforceable contractual relationship with Defendant Marriott through the Marriott Bonvoy Terms and Conditions and his Ambassador Elite membership, under which Plaintiff accrued and redeemed loyalty rewards points in exchange for his paid stays at Marriott-branded properties.

44.     Defendant Westmont was aware of this contractual relationship. As operator of the Westin Mount Laurel Hotel, Westmont knew Plaintiff was a Marriott Bonvoy Ambassador Elite member and that his loyalty points and status were governed by Marriott's program rules.

45.     Without justification, Westmont falsely and improperly reported to Marriott that Plaintiff engaged in alleged "abusive" or inappropriate conduct during his December 2023 stay at the Westin Mount Laurel. Plaintiff denies such conduct occurred, and no contemporaneous guest complaints, incident reports, or police reports support Westmont's accusation.

46.     Westmont made this report with the intent, or at minimum with knowledge, that its communication would cause Marriott to take adverse action against Plaintiff's Bonvoy account and loyalty status. Westmont knew or should have known that Marriott would rely on its report in evaluating Plaintiff's account standing.

47.     As a direct and proximate result of Westmont's false and unfounded report, Marriott deducted all 643,412 loyalty points from Plaintiff's account, applied a "Fraud Remaining Balance Remove" designation to his record, and deprived him of his Ambassador Elite benefits.

48.     Westmont's actions constituted intentional interference with Plaintiff's contractual relationship with Marriott. Even if Westmont contends its report was made in the course of

business, its false and unsupported accusation was not privileged, was made in bad faith, and was outside the scope of legitimate business conduct.

49.    As a further direct and proximate result of Westmont's tortious interference, Plaintiff has suffered damages in excess of $75,000, including the loss of his 643,412 loyalty points, deprivation of Ambassador Elite benefits, reputational harm, and lost business opportunities.

## COUNT FIVE

### TORTIOUS CONDUCT OF FICTITIOUS INDIVIDUALS AND ENTITIES

### As to Defendants JOHN DOES 1-10 and ABC ENTITIES 1-10

50.    Plaintiff repeats and realleges all factual allegations contained in this Complaint as if fully set forth herein.

51.    At all times relevant to this action, Defendants JOHN DOES 1–10 and ABC ENTITIES 1–10 are fictitious names for individuals and entities whose identities are presently unknown but who participated in, directed, approved, or ratified the tortious actions described herein, including the arbitrary removal of Plaintiff's loyalty points and the false designation of "fraud" on his Marriott Bonvoy account.

52.    These unidentified individuals and entities may include, but are not limited to, Marriott employees or managers involved in applying the "Fraud Remaining Balance Remove" designation, Westmont employees or managers at the Westin Mount Laurel who reported alleged misconduct, and/or third-party agents or contractors who participated in or facilitated the wrongful acts.

53.    Plaintiff has not yet had a sufficient opportunity to discover the names and roles of all individuals and entities responsible for these actions. Through discovery, Plaintiff expects to identify such parties and will amend this Complaint to name them specifically.

54.     The conduct of these JOHN DOE and ABC ENTITY Defendants constituted negligence, tortious interference, and/or other wrongful conduct as alleged in this Complaint. Their actions directly and proximately caused Plaintiff to lose his 643,412 loyalty points, his Ambassador Elite benefits, and to suffer reputational and financial harm.

55.     As a result of the negligence and/or tortious conduct of Defendants JOHN DOES 1–10 and ABC ENTITIES 1–10, Plaintiff has sustained damages in excess of $75,000, for which he seeks judgment against them jointly and severally with the other Defendants.

## JURY DEMAND

56.     Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff John Groff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants Marriott International, Inc., Westmont Hospitality Group, Inc., and JOHN DOES 1–10 and ABC ENTITIES 1–10 (collectively, "Defendants") and award the following relief:

A.  Compensatory damages in an amount to be proven at trial but not less than $150,000, representing the fair market value of 643,412 Marriott Bonvoy points wrongfully deducted from Plaintiff's account, the loss of Ambassador Elite benefits, reputational harm, and related financial losses;

B.  Treble damages, attorneys' fees, and costs as authorized under the Maryland Consumer Protection Act;

C.  Restitution and disgorgement of all benefits unjustly retained by Defendants as a result of their unlawful conduct;

D.  Injunctive and equitable relief, including but not limited to an order directing Marriott to restore Plaintiff's Marriott Bonvoy account, reinstate his Ambassador Elite status, and credit back the 643,412 points wrongfully deducted;

E.  Pre-judgment and post-judgment interest as permitted by law; and

F.  Such other and further relief as this Court deems just and equitable.

Dated: <u>AUGUST 6, 2025</u>                    LENTO LAW GROUP, P.C.

_____

LAWRENCE A. KATZ, ESQUIRE
ATTORNEY ID: 027051988
3000 ATRIUM WAY – SUITE 200
MOUNT LAUREL, NEW JERSEY
08054
(T) (856) 652-2000
(F) (856) 375-1010
lakatz@lentolawgroup.com