**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

JOHN GROFF,                )
                                  )
         Plaintiff,        )
                                    )       Civil Action No. 1:25-cv-02031-ABA
    V.                         )       **(JURY TRIAL REQUESTED)**
                                    )
MARRIOTT WORLDWIDE      )
CORPORATION And WESTMONT   )
HOSPITALITY GROUP, INC. And    )
JOHN DOES 1-10 (fictitious names), And )
ABC ENTITIES 1-10, (fictitious entities), )
                                    )
         Defendants.      )

**PLAINTIFF'S SECOND CORRECTED/ AMENDED COMPLAINT**

Plaintiff, JOHN GROFF, by way of Complaint against the Defendants, MARRIOTT

GUEST SERVICES, INC., a Delaware corporation and foreign for-profit corporation registered

in the State of Maryland and WESTMONT HOSPITALITY GROUP, INC., a Texas

corporation and a foreign for-profit corporation registered in the State of Texas and JOHN

DOES 1-10 (fictitious names) and ABC ENTITIES 1-10 (collectively, "Defendants"), jointly,

severally, or in the alternative, hereby states as follows:

**PARTIES**

1.      At all times relevant herein, Plaintiff JOHN GROFF, is an adult resident citizen of the

state of New Jersey., with a business address at 3000 Atrium Way, Suite 200, Mt. Laurel, NJ

08054.

2.      Defendant MARRIOTT INTERNATIONAL, INC., ("Marriott"), is a Delaware

corporation with for-profit corporation incorporated in the State of Delaware with its principal

place of business at 7750 WISCONSIN AVE., BETHESDA MD 20814. ~~Marriott's registered~~

~~agne for service of process~~ The registered agent on file for Defendant Marriott is CSC-

LAWYERS  INCORPORATING SERVICE COMPANY, 7 St. Paul Street, Suite 820, Baltimore MD

21202.

3.      Defendant WESTMONT HOSPITALITY GROUP, INC. ("Westmont"), is a ~~for-~~

~~profit~~Texas corporation incorporated in the State of Texas and has its principal place of

business at 5847 SAN FELIPE ST., STE 4600, HOUSTON, TX 77057 ~~3426~~. ~~Westmont may~~

~~be served with summons by serving its registered agent for service of process, Capitol~~

~~Corporate Services, Inc. 1501 S Mopac Expwy, Ste 220, Austin, TX 78746~~Westmont's

registered agent for service of process is Capitol Corporate Services, Inc., 1501 South Mopac

Expressway, Suite 220, Austin Texas 78746.

### JURISDICTION & VENUE

4.      The Court has subject-matter jurisdiction ~~over the Plaintiff's federal law claims,~~

pursuant to 28 U.S.C. § ~~§~~1332(a) because this is a civil action between citizens of different

states and the amount in controversy exceeds \$75,000, exclusive of interest and costs.

~~(diversity) because the parties are from different states and the amount in controversy exceeds~~

~~\$75,000.00.~~

5.      This Court also has supplemental jurisdiction over ~~Plaintiff's~~ any related state law

claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to Plaintiff's

federal claims that they form part of the same case or controversy and arise out of a common

nucleus of operative fact.

6.      Venue lies in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because

Defendant Marriott International, Inc. maintains its principal place of business in this District,

and a substantial part of the events or omissions giving rise to the claims occurred in this District, including those governed by the Marriott Bonvoy customer loyalty agreement, which specifies jurisdiction and venue in the state of Maryland.

6.    ~~the events giving rise to the lawsuit are covered by a customer loyalty agreement that specifies jurisdiction and venue in the state and federal courts of the State of Maryland and because some defendants are domiciled in this district.~~

## FACTUAL BACKGROUND

7.    ~~A~~At all times relevant, Plaintiff John Groff was a longstanding and loyal customer of Marriott-branded hotels and properties managed or operated by Defendants, frequently lodging at such establishments and maintaining the highest level of elite membership in the Marriott Bonvoy loyalty program.~~t all times relevant, Mr. Groff was a longstanding customer who regularly and frequently lodged at hotel establishments maintained and/or serviced by Defendants herein.~~

8.    On or about November 30, 2023, Mr. Groff booked and stayed at the Westin Mount Laurel Hotel (hereinafter, the "Westin Hotel"), located at 555 Fellowship Road, Mount Laurel, New Jersey 08054, checking out on or about December 4, 2023~~Mr. John Groff booked a hotel room at the Westin Mount Laurel hotel (hereinafter, the "Westin Hotel"), located at 555 Fellowship Road, Mount Laurel, New Jersey 08054, for a relaxing night of rest and comfort. Mr. Groff checked out of the hotel on December 4, 2023~~.

9.    ~~A~~Following that stay, and at a date and time presently unknown to Plaintiff, Defendant Westmont Hospitality Group, Inc., which owns or operates the Westin Hotel, arbitrarily and without proper cause reported to Marriott that Plaintiff had engaged in an alleged verbal dispute with hotel staff. Plaintiff denies that he engaged in any abusive, hostile, or inappropriate conduct, and no contemporaneous guest complaints, police reports, or incident reports substantiate Westmont's

claimt a date and time unknown to Plaintiff' at this point, Defendant Westmont gratuitously, arbitrarily, and without proper cause informed Defendant Marriott of an alleged verbal dispute between Mr. Groff and its Westin hotel staff.

10.     Westmont made this report with the effect, and intent, of interfering with Plaintiff's longstanding contractual and business relationship with Marriott and his participation in the Marriott Bonvoy loyalty programdid so with the intention to interfere with Mr. Groff's contractual business relationship with Defendant Marriott.

11.     On December 11, 2023, without notice or explanation, Defendant Marriott International, Inc. deducted 643,412 loyalty rewards points from Plaintiff's Marriott Bonvoy account, Account No. Defendant Marriott deducted from Mr. Groff's Marriott Bonvoy account, Account # 2XXXXXXX4, and inserted the notation "Fraud Remaining Balance Remove" on his account recordsa total of 643,412 loyalty rewards points, and entered the notation "Fraud Remaining Balance Remove" on Mr. Groff's account.

12.     Plaintiff was at that time an Ambassador Elite member—the highest published status level in the Bonvoy program—reflecting Plaintiff's significant financial expenditures and years of loyalty to Marriott. Plaintiff had earned his elite status and rewards points through repeated stays, including business-related events held at Marriott properties, such as Lento Law Group's yearly holiday party hosted at the Westin Mount Laurel for consecutive yearsMr. Groff is a long-time loyal Marriott Bonvoy customer, as demonstrated by his "Ambassador Elite" status — a status which he has worked hard and spend a significant amount of money at Marriott establishments to earn.

13.     At no time prior to the deduction did Marriott notify Plaintiff that his points were at risk of forfeiture, nor did Marriott provide Plaintiff with an opportunity to contest or appeal the adverse action. Plaintiff only discovered the deduction after independently contacting Marriott to inquire

about~~did Defendant Marriott notify Mr. Groff that it intended to deduct these bonus points from~~ his account.

14.    At no time did ~~Defendant~~ Westmont notify Plaintiff that it intended to interfere with his Bonvoy account by transmitting negative and unfounded allegations to Marriott. Plaintiff was never told by Westmont that he had been "banned" from the Westin Mount Laurel; rather, he learned this after the fact from Marriott's customer service~~Mr. Groff that it intended to interfere with his business relationship with Defendant Marriott, or that it had informed Marriott of its unfounded allegations against Mr. Groff~~.

15.    Plaintiff~~Mr. Groff~~ has no knowledge of any alleged "fraud" for which he was being punished by Marriott's unilateral deduction of ~~action of deducting~~ his accumulated ~~bonus~~ points. ~~from his Marriott Bonvoy account~~Marriott has not produced any documentation substantiating the notation "Fraud Remaining Balance Remove," nor is that phrase defined in the Marriott Bonvoy Terms and Conditions.

16.    Defendants have failed and continue to refuse to provide any clear explanation for their conduct. As a result of Defendants' wrongful and arbitrary actions, Plaintiff has been deprived of rewards points and benefits with a fair market value in excess of $75,000, suffered reputational harm through the implication of "fraud," and lost the benefit of the bargain he earned through his loyal patronage of Marriott properties~~to offer, and continue to refuse to offer, any explanation of or excuse for their outrageous and fraudulent conduct~~.

## COUNT ONE
## CONSUMER FRAUD
## VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
### (As to Defendant Marriott)

17.    Plaintiff repeats all factual allegations contained in the Complaint thus far above and incorporates same as if fully set forth herein.

18.    Hotel guest services and customer loyalty programs, including the Marriott Bonvoy program, are covered by the Maryland Consumer Protection Act, Md. Code, Com. Law §§ 13-101 et seq. (the "Act")Maryland Statutes, Title 13, Section 13-101, *et seq*. (the "Act"). The Act protects consumers from unfair, abusive, and deceptive trade practices. The types of goods and services promised to Plaintiff—lodging services, loyalty points redeemable for hotel stays, and elite membership benefits—constitute "merchandise" or "services" within the scope of the Act, and Plaintiff was a "consumer" at all relevant timesdeceptive sales practices and acts. The types of goods or services promised to Plaintiff are "merchandise" or "services" within the scope of the Act, and Plaintiff was a "consumer" at the time of the occurrence in question. The Act states in relevant part.:

Section 13-301 - Unfair, Abusive, or Deceptive Trade Practices Defined

Unfair, abusive, or deceptive trade practices include any:

(1)   False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2)   Representation that:

(i)   Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

(ii)   A merchant has a sponsorship, approval, status, affiliation, or connection which he does not have;

(iii)   Deteriorated, altered, reconditioned, reclaimed, or secondhand consumer goods are original or new; or

(iv)   Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

(3)   Failure to state a material fact if the failure deceives or tends to deceive;

(4)   Disparagement of the goods, realty, services, or business of another by a false or misleading representation of a material fact;

(5)   Advertisement or offer of consumer goods, consumer realty, or consumer services:

(i)   Without intent to sell, lease, or rent them as advertised or offered; or

~~(ii)   With intent not to supply reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition;~~

~~(6)   False or misleading representation of fact which concerns:~~

~~(i)   The reason for or the existence or amount of a price reduction; or~~

~~(ii)   A price in comparison to a price of a competitor or to one's own price at a past or future time;~~

~~(8)   False statement which concerns the reason for offering or supplying consumer goods, consumer realty, or consumer services at sale or discount prices;~~

19.   ~~19.~~   Defendant Marriott represented to Plaintiff, through its published Bonvoy Terms & Conditions, promotional materials, and account statements, that points earned through stays were valid rewards redeemable for lodging and other benefits, and that Ambassador Elite members were entitled to enhanced benefits and privileges. Marriott further represented that loyalty points would accrue and be redeemable so long as Plaintiff complied with program rules.

~~Plaintiff sues for damages under Section 13-408(a) and (b) of the Act.~~

20.   ~~20.~~   ~~B~~Defendant Marriott failed to disclose a material fact—namely, that Marriott reserved the ability to remove all of a member's accumulated points and annotate the account with an unsubstantiated "fraud" designation, without notice, explanation, or investigation, even absent any fraudulent conduct. This omission was deceptive and misleading because it deprived Plaintiff of the ability to make an informed decision about whether to continue to stay at Marriott properties and forgo competitors.

21.   Defendant Marriott affirmatively misled Plaintiff when, on December 11, 2023, it entered the notation "Fraud Remaining Balance Remove" on Plaintiff's account and deducted 643,412 points, thereby falsely implying that Plaintiff had engaged in fraudulent conduct. Marriott never disclosed the nature of the alleged fraud, never provided supporting evidence, and never gave Plaintiff an opportunity to contest or cure the allegation.

22.     Plaintiff reasonably relied on Marriott's representations that points were legitimate, earned rewards of tangible value, and that his Ambassador Elite membership would confer specific benefits. In reliance on those representations, Plaintiff spent substantial sums of money at Marriott properties over many years and declined to stay with Marriott's competitors.

23.     Marriott's conduct constitutes unfair, abusive, and deceptive trade practices within the meaning of Md. Code, Com. Law § 13-301, including false or misleading representations, failure to state material facts, and disparagement of Plaintiff through the false implication of fraud.

24.     As a direct and proximate result of Marriott's misrepresentations, omissions, and unfair practices, Plaintiff has suffered ascertainable monetary losses in excess of $75,000, including but not limited to the fair market value of the 643,412 points wrongfully deducted, the lost benefits of his Ambassador Elite status, reputational harm, and the loss of use of points and privileges he reasonably expected to redeem.

25.     Plaintiff seeks all remedies available under the Act, including compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper. ~~y engaging in the conduct as alleged above, the Defendants, jointly and/or severally, committed unconscionable commercial practices including deception, fraud, falsity, and/or misrepresentation in connection with the Contract between the parties and the false representations and deceptive practices of the Defendants, as described, are all in violation of the Act. As a direct and proximate result of the Defendants' misrepresentations, deceptions, fraud, knowing concealment, suppression, and/or omissions of material facts, and other deceptive or unconscionable commercial practices in violation of the Act, Plaintiff has suffered a significant and ascertainable monetary loss in an amount in excess of $75,000.00,~~

**COUNT TWO**
**BREACH OF CONTRACT**
**(As to Defendant Marriott)**

26. Plaintiff hereby repeats all the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth herein.

27. At all times relevant, the parties hereto were parties to an an express written contract, namely, the Marriott Bonvoy Terms and Conditions, which governed Plaintiff's membership in the loyalty program, his Ambassador Elite status, and his right to accrue and redeem points earned through qualifying stays and expendituresimplied contractual relationship whereby Defendants agreed to provide Plaintiff with "points" or" bonus points" which would be redeemable by Plaintiff on demand at Marriott's numerous hotels and other establishments around the world.

28. MPlaintiff fully performed his contractual obligations by booking and paying for hotel stays and related services at Marriott-branded properties, thereby earning and accumulating 643,412 loyalty rewards points and maintaining his Ambassador Elite membership.

29. Defendant Marriott breached the express contract by unilaterally deducting all 643,412 points from Plaintiff's account and annotating his record with "Fraud Remaining Balance Remove," without cause, without notice, without investigation, and without providing Plaintiff the opportunity to contest the alleged violation. No provision of the Terms and Conditions authorizes Marriott to arbitrarily label a member as having committed "fraud" absent substantiated evidence.

30. Further, even if Marriott retained contractual discretion to suspend or terminate an account, the implied covenant of good faith and fair dealing required Marriott to exercise that discretion in a fair, honest, and non-arbitrary manner. Marriott's actions—revoking Plaintiff's earned benefits without investigation or substantiation, and falsely associating Plaintiff with fraud—constitute a breach of that covenant.

31.     Plaintiff reasonably relied on Marriott's contractual promises and representations that his earned points and Ambassador Elite benefits would remain available so long as he complied with the program rules. Plaintiff paid valuable consideration by repeatedly choosing Marriott over its competitors, incurring substantial expenditures in reliance on the loyalty program's contractual protections.

As a direct and proximate result of Marriott's breach of both the express contract and the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in excess of $75,000, including the loss of 643,412 points, the deprivation of Ambassador Elite benefits, reputational harm, and the lost value of expenditures made in reliance on Marriott's contractual commitments.~~arriott offered, and Plaintiff accepted the agreement that Plaintiff would frequently stay at Marriott-owned and operated establishments. Plaintiff accepted the agreement and paid valuable consideration therefor by booking and staying at Marriott establishments around the country and around the globe by foregoing the opportunity to take advantage of other accommodation offered by Mariott's competitors.~~

~~24.     Plaintiff paid this valuable consideration with the reasonable expectation that the customer "reward" or "loyalty" points he thus earned would be available to Plaintiff during Plaintiff's future travels.~~

~~25.~~32.  As a direct and proximate result of the Defendants' breach of the subject Contract, Plaintiff was caused to suffer monetary damages in excess of $75,000.00, for which Plaintiff hereby sues.

**<u>COUNT THREE</u>**
**CONVERSION**
**(As to Defendant Marriott)**

33. Plaintiff hereby repeats all the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth herein.

26.34.  PAlaintiff earned 643,412 Marriott Bonvoy loyalty points through frequent and regular paid stays at Marriott-branded properties, including business and personal travel. These points represented a form of valuable credit that Plaintiff was contractually entitled to redeem for hotel stays, upgrades, and other tangible benefitst all times relevant hereto, Plaintiff was the contractual owner, holder, or beneficiary of the bonus points at issue in this action, having earned them as the result of frequent and regular stays at Marriott establishments during his travels.

20.        AAlthough Marriott's Terms and Conditions state that points are the property of Marriott, Plaintiff had a vested, contractual right to use and redeem the points he had earned. The points held ascertainable monetary value, as they could be redeemed for specific goods and services in the hospitality marketplace and were routinely marketed and represented by Marriott as valuable consumer rewardss such, Plaintiff had a contractual right to redeem or use these bonus points by charging the cost of his stays against these bonus points until they were exhausted.

35.     D

36.     On December 11, 2023, Defendant Marriott unilaterally and without justification deducted all 643,412 of Plaintiff's earned points and placed a "Fraud Remaining Balance Remove" notation on his account, thereby depriving Plaintiff of the ability to use or redeem the points.efendants, jointly and severally, though their illegal actions, deprived Plaintiff of the possession and ability to use these bonus points, constituting the tort of conversion.

37.     Marriott's wrongful appropriation of Plaintiff's points, earned through his financial expenditures and reliance on Marriott's representations, constitutes conversion under Maryland law. Plaintiff had a right to immediate use of the points, and Marriott exercised dominion and control over them in a manner inconsistent with Plaintiff's rights.

38.      In the alternative, to the extent this Court finds that Plaintiff did not hold a possessory interest in the points sufficient to support a conversion claim, Plaintiff pleads unjust enrichment. Marriott has been unjustly enriched by retaining the full benefit of Plaintiff's expenditures, while stripping him of the promised rewards and falsely branding him with a "fraud" designation.

27.39.  Allowing Marriott to retain both the monetary value of Plaintiff's stays and the associated points would result in inequity and unjust enrichment, as Plaintiff paid for accommodations in reliance on Marriott's loyalty program representations but was denied the bargained-for benefit of redeemable rewards.

28.40.  As a direct and proximate result of ~~the Defendants'~~Marriott's conduct, Plaintiff has suffered damages in excess of $75,000, including the loss of the 643,412 points, the deprivation of Ambassador Elite benefits, reputational harm, and lost business opportunities associated with his loyalty program participation~~breach of the subject Contract, Plaintiff was caused to suffer monetary damages in excess of $75,000.00, for which Plaintiff hereby sues~~.

**COUNT FOUR**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(As to Defendant Westmont)**

41.      Plaintiff hereby repeats all the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth herein.

42.      Plaintiff had a valid and enforceable contractual relationship with Defendant Marriott through the Marriott Bonvoy Terms and Conditions and his Ambassador Elite membership, under which Plaintiff accrued and redeemed loyalty rewards points in exchange for his paid stays at Marriott-branded properties.

43.    Defendant Westmont was aware of this contractual relationship. As operator of the Westin Mount Laurel Hotel, Westmont knew Plaintiff was a Marriott Bonvoy Ambassador Elite member and that his loyalty points and status were governed by Marriott's program rules.

44.    Without justification, Westmont falsely and improperly reported to Marriott that Plaintiff engaged in alleged "abusive" or inappropriate conduct during his December 2023 stay at the Westin Mount Laurel. Plaintiff denies such conduct occurred, and no contemporaneous guest complaints, incident reports, or police reports support Westmont's accusation.

29.    Westmont made this report with the intent, or at minimum with knowledge, that its communication would cause Marriott to take adverse action against Plaintiff's Bonvoy account and loyalty status. Westmont knew or should have known that Marriott would rely on its report in evaluating Plaintiff's account standing.By falsely and improperly informing Defendant Marrott of the purported misconduct of Plaintiffs with the intention of having Defendant Marriott "punish" Plaintiff for the purported misconduct, Westmont either negligently or intentionally interfered with Plaintiff's contractual relationship with Marriott under the agreement titled "Terms and Conditions, Loyalty Rewards Program, Marriott Bonvoy."

45.

46.    As a direct and proximate result of Westmont's tortious interferencefalse and unfounded report, Marriott simply cancelled deducted all 643,412 loyalty rewards points which from Plaintiff's account, applied a "Fraud Remaining Balance Remove" designation to his record had worked hard to accumulate, causing the damages complained of hereinand deprived him of his Ambassador Elite benefits.

47.    Westmont's actions constituted intentional interference with Plaintiff's contractual relationship with Marriott. Even if Westmont contends its report was made in the course of

business, its false and unsupported accusation was not privileged, was made in bad faith, and was outside the scope of legitimate business conduct.

48.    As a further direct and proximate result of Westmont's tortious interference, Plaintiff has suffered damages in excess of $75,000, including the loss of his 643,412 loyalty points, deprivation of Ambassador Elite benefits, reputational harm, and lost business opportunities.

~~30.~~

~~31.    As a further direct and proximate result of the Defendants' breach of the subject Contract, Plaintiff was caused to suffer monetary damages in excess of $75,000.00, for which Plaintiff hereby sues.~~

## COUNT FIVE

### TORTIOUS CONDUCT OF FICTITIOUS INDIVIDUALS AND ENTITIES
### As to Defendants JOHN DOES 1-10 and ABC ENTITIES 1-10

~~32.~~49.  Plaintiff hereby repeats all allegations and Exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

~~33.~~50.  At all times relevant to this action, Defendants JOHN DOES 1-10 and ABC ENTITIES 1-10, are fictitious names for Defendant individuals and entities whose identities are unknown at present, but who participated in, directed, approved, or ratified the tortious actions described herein, including the arbitrary removal of Plaintiff's loyalty points and the false designation of "fraud" on his Marriott Bonvoy account~~constitute persons, partnerships, joint ventures, corporations, associations, or other forms of private business entities who participated in the tortious actions of Defendants described herein, whether by way of their negligence or in other ways as yet undetermined~~.

51.    These unidentified individuals and entities may include, but are not limited to, Marriott employees or managers involved in applying the "Fraud Remaining Balance Remove"

designation, Westmont employees or managers at the Westin Mount Laurel who reported alleged misconduct, and/or third-party agents or contractors who participated in or facilitated the wrongful acts.

52.    Plaintiff has not yet had a sufficient opportunity to discover the names and roles of all individuals and entities responsible for these actions. Through discovery, Plaintiff expects to identify such parties and will amend this Complaint to name them specifically.

53.    The conduct of these JOHN DOE and ABC ENTITY Defendants constituted negligence, tortious interference, and/or other wrongful conduct as alleged in this Complaint. Their actions directly and proximately caused Plaintiff to lose his 643,412 loyalty points, his Ambassador Elite benefits, and to suffer reputational and financial harm.

34.    As a direct and proximate result of the negligence and/or tortious conduct of Defendants JOHN DOES 1-10 and ABC ENTITIES 1-10, Plaintiff has been caused to suffer, and in fact did suffer, significant damages.

35.    Plaintiff alleges an insufficient opportunity to determine the identity of all individuals or business entities whose actions or omissions may be potentially responsible in whole or in part for the damages incurred by Plaintiff.

36.    As such, Plaintiff specifically reserves the right to name additional individuals or entities as Defendants to this action, when and if their identities become known to Plaintiff.

37. 54.  As a result of the negligence and/or tortious conduct of Defendants JOHN DOES 1–10 and ABC ENTITIES 1–10, Plaintiff has sustained damages in excess of $75,000, for which he seeks judgment against them jointly and severally with the other Defendantsdirect and proximate result of the Defendants' breach of the subject Contract, Plaintiff was caused to suffer monetary damages in excess of $75,000.00, for which Plaintiff hereby sues.

## JURY DEMAND

38.55.    Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff, John Groff, respectfully requests that this honorable Court summon defendants, MARRIOTT GUEST SERVICES, INC., and WESTMONT HOSPITALITY GROUP, INC., and JOHN DOES 1-10 (fictitious names) and ABC ENTITIES 1-10 (collectively, "Defendants"),

and award the following relief:

A.  Compensatory damages in an amount to be proven at trial but not less than $150,000, representing the fair market value of 643,412 Marriott Bonvoy points wrongfully deducted from Plaintiff's account, the loss of Ambassador Elite benefits, reputational harm, and related financial losses;

B.  Treble damages, attorneys' fees, and costs as authorized under the Maryland Consumer Protection Act;

C.  Restitution and disgorgement of all benefits unjustly retained by Defendants as a result of their unlawful conduct;

D.  Injunctive and equitable relief, including but not limited to an order directing Marriott to restore Plaintiff's Marriott Bonvoy account, reinstate his Ambassador Elite status, and credit back the 643,412 points wrongfully deducted;

E.  Pre-judgment and post-judgment interest as permitted by law; and

F.  Such other and further relief as this Court deems just and equitable.

to appear and answer herein and prays for judgment against Defendants in the total amount of $80,000.00 plus pre and post-judgment interest, attorneys fees and costs of court. In the alternative, Plaintiff prays for an order enjoining Defendants to restore Plaintiff's

~~membership in and points under the loyalty rewards program as it was before the incident~~

~~complained of, and such other and further relief as may be just and equitable.~~

Dated: <u>September 15, 2025</u>          LENTO LAW GROUP, P.C.

LAWRENCE A. KATZ, ESQUIRE
ATTORNEY ID: 027051988
3000 ATRIUM WAY – SUITE 200
MOUNT LAUREL, NEW JERSEY
08054
(T) (856) 652-2000
(F) (856) 375-1010
lakatz@lentolawgroup.com