**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOHN GROFF, | * | |
| *Plaintiff*, | * | |
| v. | * | Case No. 8:25-cv-02031-DLB |
| MARRIOTT WORLDWIDE CORPORATION, et al. | * | |
| *Defendant*s. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendants, Westmont Hospitality Group, Inc. (hereinafter "Westmont") and Marriott International, Inc., improperly sued as Marriott Worldwide Corporation (hereinafter "Marriott"),[1] by and through their attorneys, Ashley L. Voli, and Lewis Brisbois Bisgaard & Smith, LLP, pursuant to FRCP 12(b)(6), hereby file this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Second Amended Complaint.

## I.    Introduction

This lawsuit arises from Plaintiff John Groff's contentions that Defendants Marriott and Westmont acted improperly with respect to Plaintiff's Marriott Bonvoy Loyalty Program Account (the "Account").  Plaintiff has asserted the following claims in this lawsuit against Marriott and Westmont: Violation of the Maryland Consumer Protection Act (MCPA) by Marriott (Count 1);

---

[1] Plaintiff has filed this lawsuit against "Marriott Worldwide Corporation," which is an entity that has no relation to the alleged facts and circumstances of this case.  Elsewhere in the Second Amended Complaint, Plaintiff references claims against "Marriott Guest Services, Inc.," an entity does not exist.  To the extent that Plaintiff asserts claims related to his previous Marriott Bonvoy Loyalty Program Account, that account was administered by Marriott International, Inc.

167646182.1   1

Breach of Contract by Marriott (Count 2); Conversion by Marriott (Count 3) and Tortious Interference with Contractual Relations by Westmont (Count 4).[2]

It is clear from the face of Plaintiff's Second Amended Complaint, and the documents relied upon and referenced therein, that the causes of action do not state a claim for which relief can be granted against the Defendants. The Terms and Conditions that govern the Loyalty Program upon which each cause of action in the lawsuit is premised are clear that Marriott may, in its sole discretion, revoke, cancel and/or suspend an individual's account immediately and without notice. Plaintiff's participation in the Loyalty Program constituted his consent to the Terms and Conditions. Thus, pursuant to the written agreement between the parties, there can be no viable claim against the Defendants as alleged in the Second Amended Complaint. None of the pleading amendments by the Plaintiff have altered this inescapable conclusion.

Accordingly, for the reasons set forth more fully herein, Plaintiff's Second Amended Complaint fails to state a claim against the Defendants and must be dismissed, with prejudice and without leave to further amend, pursuant to FRCP 12(b)(6).

## II.    Standard of Review

The Court in *Bryant v. Koppers, Inc.*, 627 F.Supp.3d 466, 473-74 (D. Md. 2022), explained the standard for considering a motion to dismiss for failure to state a claim:

> A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City Of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

---

[2] In their Motion to Dismiss, Defendants do not address Count 5 of the Second Amended Complaint for alleged "Tortious Conduct of Fictitious Individuals and Entities," which is not asserted against Marriott and/or Westmont.

167646182.1    2

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

If fraud is alleged, Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake." A plaintiff "must plead 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation, and what he obtained thereby.' " *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019). "Rule 9(b) refers to 'alleging fraud,' not to causes of action or elements of fraud." *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).

## III.    Argument

Pursuant to well-established federal law, in its consideration of a preliminary motion to dismiss, the Court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted); *see also Boardley v. Household Finance Corp. III*, 39 F. Supp. 3d 689, 699 (D. Md. 2014) . Here, each cause of action in Plaintiff's Second Amended Complaint is premised upon Plaintiff's Marriott Bonvoy Loyalty Program Account, which is governed by the Program Terms and Conditions.  Indeed, Plaintiff's claim for alleged breach of contract (Count 2) necessarily hinges upon the Terms and Conditions, which Plaintiff

cites in the Second Amended Complaint as embodying his contract with Marriott (*see* SAC ¶ 27).[3]

Plaintiff further asserts that "a substantial part of the events or omissions giving rise to the claims occurred in this District, including those governed by the Marriott Bonvoy customer loyalty agreement[.]" (*See id.* at ¶ 6). Thus, this Court's consideration of the Terms and Conditions is appropriate in its evaluation of the Defendants' Motion to Dismiss.

The December 5, 2023 Loyalty Program Terms and Conditions were in effect at the time Plaintiff's Membership Account was closed by Marriott on or about December 11, 2023. A true and accurate copy of the December 2023 Terms and Conditions is attached hereto as Exhibit A.[4] By its terms, when an individual opens a Loyalty Program Membership Account and/or uses the Membership Account, the individual agrees that he or she has read the Terms and Conditions and consents to them. (*See* Exh. A, p. 1).

Membership in the Loyalty Program is free and available to any individual who meets certain criteria. (*See* Exh. A, § 1.1). As set forth in Section 1.7.b, "The Loyalty Program, Points, Awards, and other related benefits and services are the sole property of the Company, and are not the property of Members." (*Id.* at § 1.7.b). Further, the Terms and Conditions make clear that the Points, Awards and other related benefits and services have no cash value. (*Id.*).

---

[3] *See Barr v. Flagstar Bank, FSB*, 303 F.Supp.3d 400, 412 (D. Md. 2018) (determining that the Court could properly consider, in the context of the defendant's motion to dismiss, the contract that was the subject of the plaintiffs' breach of contract claim); *see also Mohamed v. Bank of Am., N.A.*, 771 F. Supp. 3d 695, 708 (D. Md. 2025) ("Typically, a contract is considered an integral document to a breach of contract action.")

[4] The December 2023 Loyalty Program Terms and Conditions are publicly available online at: https://web.archive.org/web/20231205193619/https://www.marriott.com/loyalty/terms/default.mi. "District courts have taken judicial notice of the contents of webpages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1374 (Fed. Cir. 2021) (quotations and citations omitted).

Section 1.7 of the Terms and Conditions includes certain conditions of enrollment that govern an individual's participation in the Program.  Specifically, section 1.7.a.ii states:

> The Company may cancel a Member's accumulated Points, suspend Loyalty Program benefits, suspend Elite Membership Status, suspend Lifetime Elite Membership Status (which will subsequently also remove protection against the forfeiture of Points should the member become inactive as described in Section 1.6.d.), or cancel a Member's Account at any time with immediate effect and without written notice, for any reason and in the Company's sole discretion including, without limitation, if the Company believes the Member has:
>
> > A. Acted in a manner inconsistent with applicable laws, regulations, ordinances;
> >
> > B. Failed to pay any hotel or other bill when due to the Company or a Participating Property or failed to fulfill a Marriott Vacation Club, Marriott Grand Residence Club, Sheraton Vacation Club, Westin Vacation Club, or The Phoenician Residences, a Luxury Collection Residence Club, Scottsdale, financial obligation;
> >
> > C. Acted in an inappropriate, fraudulent, abusive or hostile manner;
> >
> > D. Breached or violated any of these Program Rules or the Website Terms of Use;
> >
> > E. Fraudulently claimed eligibility to earn benefits through Marriott BonvoyTM Events; or
> >
> > F. Engaged in any misconduct or wrongdoing in connection with the Loyalty Program including, without limitation, with respect to Points, Elite Night Credit, Award usage, or any other Loyalty Program Member benefits.

Further, Section 4.1.a explicitly states that all Terms and Conditions apply to Elite Membership as well.  Thus, per Section 4.1.b, to which Plaintiff consented:

> Pursuant to section 1.7.a., the Company reserves the right to revoke, cancel or suspend a Member's Elite membership status (including Lifetime Elite Status), any Loyalty Program Membership, Award, and/or any and all unredeemed Points or Miles, or take other action at its discretion, at any time with immediate effect and without written notice if the Company believes the Member has (a) violated any of the Program Rules, (b) failed to pay any bills or accounts due to the Company or a Participating Property or any ownership related fees owed to Marriott Vacation Club properties, Marriott Grand Residence Club, Sheraton Vacation Club, or Westin Vacation Club properties, or The Phoenician Residences, a Luxury

Collection Residence Club, Scottsdale, (c) acted in a manner inconsistent with applicable law, regulations or ordinances, (d) engaged in any misconduct or wrongdoing in connection with the Marriott Bonvoy Loyalty Program, including without limitation, involving Point credit, Mile credit, Award use, or Member benefits, or (e) engaged in abusive, fraudulent, inappropriate, or hostile conduct in connection with the Marriott Bonvoy Loyalty Program, the Participating Properties or their guests or employees, or the Company or its employees. Nothing in these Program Rules will limit Company from exercising any legal rights or remedies that it may have.

The Terms and Conditions further state that Marriott "makes no warranties or representations, either expressed or implied, with respect to type, quality or fitness of goods or services provided through the Loyalty Program or by Participating Properties." (*See* Exh. A, § 9.7). Marriott reserves the right to monitor member accounts at all times for compliance with the Terms and Conditions. (*See id.* at § 9.1).

By participating in the Loyalty Rewards Program, Plaintiff agreed to abide by these Terms and Conditions, which make clear that Plaintiff has no factual or legal basis to assert the claims set forth in his Second Amended Complaint against the Defendants. Accordingly, for the reasons discussed below, this Court should dismiss Plaintiff's Second Amended Complaint in its entirety, with prejudice and without leave to further amend.[5]

A. Plaintiff has not stated a cause of action for violation of the MCPA by Marriott (Count 1)

In support of his cause of action in Count 1 for alleged violations of the MCPA by Marriott, Plaintiff asserts that Marriott represented to Plaintiff that "points earned through stays were valid rewards redeemable for lodging and other benefits, . . . that Ambassador Elite members were entitled to enhanced benefits and privileges . . . [and] that loyalty points would accrue and be

---

[5] Although the focus of Defendants' Motion is Plaintiff's failure to state a claim, Marriott also expressly reserves the right to raise additional arguments and defenses premised upon the Limitation of Liability clause in section 9.13 of the Terms and Conditions, which specifically precludes the claims Plaintiff attempts to assert in this lawsuit.

redeemable so long as Plaintiff complied with program rules." (SAC ¶ 19). Plaintiff further contends that Marriott failed to disclose that it reserved the right to cancel a member's account without notice. (*See* SAC ¶ 20). However, as set forth herein, the scope of Mariott's actions and rights were specifically delineated by the Loyalty Rewards Program Terms and Conditions, which explicitly advised all members, including Plaintiff, of Marriott's right to cancel an account for any reason, in its sole discretion, without notice. Plaintiff agreed to these Terms. Accordingly, Plaintiff cannot state a claim for violations of the MCPA and Count 1 of the Second Amended Complaint must be dismissed.[6]

To state a claim under the MCPA, a plaintiff must adequately plead that: "(1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018). "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013). As stated by the Court in *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (D. Md. 2013), an MCPA claim "which sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud.' Fed.R.Civ.P. 9(b). The circumstances include the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."

---

[6] Marriott does not concede that the MCPA applies to the facts and circumstances of this case, nor does it concede that it qualifies as a "merchant," that Plaintiff qualifies as a "consumer" or that the points, awards and/or benefits at issue in this case are "goods or services" under the statute. Marriott expressly reserves the right to raise any and all available defenses in this litigation.

Plaintiff's Second Amended Complaint still does not meet the heightened pleading requirements of FRCP 9(b).  More specifically, Plaintiff's allegations do not identify any fraudulent or deceptive misrepresentation by Marriott that would substantiate a claim under the MCPA.  Rather, the Loyalty Program Terms and Conditions, to which Plaintiff consented through his participation, dictate the actions that Marriott could take with respect to Plaintiff's Account.  Pursuant to the Terms and Conditions, Marriott could, in its sole discretion, cancel accumulated points, suspend Program benefits and/or cancel a member's account for <u>any reason</u>, including but not limited to, circumstances in which Marriott believed that the member acted in an inappropriate, fraudulent, abusive or hostile manner and/or engaged in any misconduct or wrongdoing with respect to the Program.  (*See* Exh. A, § 1.7).  As alleged in the Second Amended Complaint, Marriott entered a notation into Plaintiff's Account relating to his fraudulent conduct and, per the Terms and Conditions, exercised its contractual right to cancel Plaintiff's Loyalty Program Account.  Such actions were specifically contemplated in the Terms and Conditions to which Plaintiff agreed.

As set forth herein, the Terms and Conditions were available to Plaintiff to review at any time.  Plaintiff was aware, from the outset of his participation in the Loyalty Program, that the Terms and Conditions permitted Marriott to exercise its discretion to terminate his Account, at any time, for any reason and without notice.[7]  Plaintiff specifically consented to the Terms and Conditions through his participation in the Program.  (*See* SAC ¶ 7) (asserting that Plaintiff was a "longstanding and loyal customer of Marriott-branded hotels and properties").  Plaintiff may be displeased with Marriott's decision to cancel his account as a result of his wrongful conduct, but

---

[7] Marriott disputes that it failed to provide notice and/or an explanation to Plaintiff for the cancellation of his Account, but that factual dispute is not at issue in this Motion.

167646182.1  8

there were no fraudulent or deceptive practices by Marriott, who acted in accordance with the Terms and Conditions to which Plaintiff consented. The entire premise of Plaintiff's claim in Count 1 of the Second Amended Complaint is that Marriott violated the MCPA by cancelling his account – an action that Marriott explicitly reserved the right to do under the Loyalty Program Terms and Conditions. As a matter of law, Marriott cannot have misrepresented or deceived Plaintiff by taking an action that Marriott previously advised in writing, and to which Plaintiff agreed, could be taken.

Plaintiff cannot state a claim for a violation of the MCPA under these facts and Count 1 of the Second Amended Complaint must be dismissed, with prejudice and without leave to further amend.

> B. Plaintiff has not alleged that Marriott breached its contractual agreement with him (Count 2)

In his Second Amended Complaint, Plaintiff now concedes, as he must, that the Loyalty Program Terms and Conditions constituted an express written contract between him and Marriott. (*See* SAC ¶ 27). The crux of Plaintiff's argument in Count 2 is his contention that Marriott cancelled his Program Account – but, per the Terms and Conditions, Plaintiff expressly agreed that Marriott had the right to do so, immediately and without prior notice, in its sole discretion. Thus, Plaintiff does not, and cannot, identify any provision in the Terms and Conditions that was allegedly breached by Marriott. Moreover, there could be no breach of the implied covenant of good faith and fair dealing when Marriott exercised rights explicitly reserved to it under the parties' contractual agreement. Accordingly, Count 2 for alleged breach of contract must be dismissed.

Under Maryland law, to establish a breach of contract claim, the plaintiff must sufficiently allege: (1) "that the defendant owed the plaintiff a contractual obligation"; and (2) "that the defendant breached that obligation." *Barr*, 303 F. Supp. 3d at 412 (citations omitted).

167646182.1   9

Here, no extended discussion of the law is necessary. Plaintiff's Second Amended Complaint does not identify any provision of the Terms and Conditions that Marriott purportedly breached. Indeed, the Terms and Conditions to which Plaintiff agreed to be bound specifically state that Marriott had the right, in its sole discretion, to cancel a member's account at any time, for any reason, and without notice. Thus, Plaintiff's contention that Marriott breached its contract with him by cancelling his Account has no basis in fact or in law.

Plaintiff now contends, in the alternative, that Marriott's actions in cancelling his Account breached the implied covenant of good faith and fair dealing. (*See* SAC ¶ 30). In support of this contention, Plaintiff alleges that, prior to cancelling his Account, Marriott was required to give notice, conduct an investigation, develop "substantiated evidence" and provide Plaintiff with an opportunity to contest Marriott's decision. (*See id.* at ¶¶ 29-30). Neither the Terms and Conditions, nor Maryland law, require any such actions by Marriott prior to exercising its contractual right to cancel Plaintiff's Program Account.

The Maryland Supreme Court in *Blondell v. Littlepage*, 413 Md. 96, 114 (2010) (quoting *Eastern Shore Markets, Inc. v. J.D. Associates, Ltd.*, 213 F.3d 175, 182-84 (4th Cir. 2000)), explained the application of the implied covenant of good faith and fair dealing:

> [T]he covenant of good faith and fair dealing "does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract]." *Parker v. Columbia Bank*, 91 Md.App. 346, 604 A.2d 521, 531 (1992) (addressing duty of good faith and fair dealing in contracts between lender and borrower). Rather, the duty "simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Id.* ... In short, while the implied duty of good faith and fair dealing recognized in Maryland requires that one party to a contract not frustrate the other party's performance, it is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise. An implied duty is simply a recognition of conditions inherent in expressed promises.

*See also Margolis v. Sandy Spring Bank*, 221 Md. App. 703, 723 (2015) ("Under Maryland law, the implied covenant of good faith and fair dealing ordinarily imposes no affirmative obligations outside the express terms of the contract itself") (citations omitted).

Here, Plaintiff seeks to impose affirmative obligations on Marriott that appear nowhere in the Terms and Conditions – such arguments are contrary to well-established Maryland law. The implied covenant of good faith and fair dealing (if it does, in fact, apply to the Loyalty Program Terms and Conditions) does not work to create additional obligations on behalf of Marriott outside the express terms of the contract, such as providing "substantiated evidence" to Plaintiff of Marriott's fraud determination and/or an opportunity for Plaintiff to appeal or contest Marriott's decision, as alleged in the Second Amended Complaint. The Terms and Conditions make clear that Marriott may exercise its discretion to cancel a Member's Account for any reason and without notice. Marriott, therefore, complied with the express contractual obligations of the Terms and Conditions and there is no basis under Maryland law upon which Plaintiff can state a claim under any breach of contract theory.

Accordingly, this Court should dismiss Count 2 of Plaintiff's Second Amended Complaint, with prejudice and without leave to further amend.

C.  Marriott cannot be liable for conversion of its own property (Count 3)

In Count 3 of the Second Amended Complaint for alleged conversion, Plaintiff concedes that the Loyalty Rewards Program Terms and Conditions state that the Program "points" at issue are the property of Marriott. (*See* SAC ¶ 34). Despite this unambiguous fact, Plaintiff nevertheless asserts that he had a "vested, contractual right to use and redeem the points he had earned," thus supporting a claim for conversion against Marriott when it "depriv[ed] Plaintiff of the ability to use or redeem the points." (*See id.* ¶¶ 34-36). In the alternative, Plaintiff asserts a claim for unjust

enrichment, contending that he was "denied the bargained-for benefit of redeemable rewards." (*See id.* ¶ 39). Both legal theories fail under clear Maryland law.

To establish the intentional tort of conversion, a plaintiff must prove: "(1) plaintiff's right to possess the property; and (2) defendant's intentional taking of the property without authority or permission." *Froelich v. Erickson*, 96 F. Supp. 2d 507, 525–26 (D. Md. 2000) (citation omitted). As stated by the Court in *Pisner v. McCarthy*, 630 F. Supp. 3d 690, 706 (D. Md. 2022):

> "At a minimum, a defendant liable of conversion must have 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.' " [*Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249 (2004)] at 262, 841 A.2d 828 (quoting *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200 (1985)). Maryland law also states that "in order to recover for conversion one must either have been in actual possession or have had the right to immediate possession." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 64, 502 A.2d 1057 (1986) (citations omitted).

In *Yuan v. Johns Hopkins University*, 452 Md. 436, 465-66 (2017), the Maryland Supreme Court upheld the lower court's determination that the plaintiff could not state a claim for conversion relating to the research data at issue because the written policy of Johns Hopkins University, plaintiff's former employer, explicitly stated that such data was the property of the University.

Here, Plaintiff's claim for conversion by Marriott similarly fails, as he cannot establish the elements for that intentional tort. The Terms and Conditions explicitly state that the awards, points and other benefits under the Loyalty Program are the property of Marriott – they are not the property of any individual member, including Plaintiff. (Exh. A, § 1.7.b) ("The Loyalty Program, Points, Awards, and other related benefits and services are the sole property of the Company, and are not the property of Members."). As such, Marriott cannot convert its own property, as the Court held in *Yuan* under well-established law.

Further, as set forth above, Marriott did not act wrongfully in cancelling Plaintiff's Account. Rather, Marriott had the right, under the agreed upon Terms and Conditions, to cancel

Plaintiff's Account at any time, for any reason, in its sole discretion.  Given that the "points" at issue in Plaintiff's Second Amended Complaint were not the property of the Plaintiff, Marriott cannot, as a matter of law, be liable for conversion, and Count 3 of the Second Amended Complaint must also be dismissed.

Plaintiff's alternative theory of unjust enrichment is easily dispensed with.  As Maryland Courts have clearly stated, "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."  *County Com'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000) (quoting *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (1998)).  As set forth in detail above, and readily conceded in Plaintiff's Second Amended Complaint, the claims at issue in this case are subject to and governed by the Loyalty Rewards Program Terms and Conditions.  Given that there is an express written contract between the parties, Plaintiff may not pursue a quasi-contract claim for alleged unjust enrichment.

Thus, Plaintiff's claim in Count 3 of the Second Amended Complaint should be dismissed, with prejudice and without leave to further amend.

> D. <u>Plaintiff's allegations do not state a claim for tortious interference with contractual relations (Count 4)</u>

In support of Count 4 of Plaintiff's Second Amended Complaint for tortious interference with contractual relations – the only claim asserted against Westmont – Plaintiff alleges that, from November 30, 2023 until December 4, 2023, he was a guest of the Westin Hotel in Mount Laurel, NJ.  (*See* SAC ¶ 8).  At a date and time "unknown to Plaintiff," employees of Westmont allegedly informed Marriott of a verbal altercation initiated by Plaintiff against Westin Hotel employees.  (*See id.* at ¶ 9).  Plaintiff contends that Westmont informed Marriott of this incident with the intention of interfering with Plaintiff's contractual relationship with Marriott through the Loyalty

167646182.1  13

Rewards Program. (*See id.* at ¶ 10). Thereafter, Plaintiff alleges that Marriott cancelled Plaintiff's Account, citing Plaintiff's fraudulent conduct as the reason. (*See id.* at ¶ 11). As set forth below, these allegations do not state a valid claim under Maryland law for tortious interference with contractual relations and Count 4 of the Second Amended Complaint should be dismissed.

In *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 267 (D. Md. 2015), the Court provided a detailed overview of the tort of interference with contractual relations:

> The tort of intentional interference with contractual or business relations is "well-established in Maryland." *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 639 A.2d 112, 116 (1994). The tort has "two general manifestations." *Id.* at 117. The first manifestation is often described as "inducing the breach of an existing contract," and the second, "more broadly," constitutes "maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *Blondell v. Littlepage*, 413 Md. 96, 125, 991 A.2d 80, 97 (2010) (citation and quotations omitted). Maryland Courts have explained that the second "interference" manifestation is appropriate when there is no existing contract or the contract is terminable at will, and the defendant uses "wrongful means" to interfere. *Macklin v. Robert Logan Assocs.*, 639 A.2d at 121; *see also Webb v. Green Tree Servicing*, No. ELH 11–2105, 2011 WL 6141464, at *4–5 (D.Md. Dec. 9, 2011). "[W]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships. Wrongful or unlawful acts include common law torts and 'violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.' " *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 650 A.2d 260, 271 (1994) (quoting *K & K Management v. Lee*, 316 Md. 137, 557 A.2d 965, 979 (1989)).

As explained by the Court in *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 652 (1994), "The elements of the broader form of the tort have remained unchanged in Maryland since this Court articulated them in *Willner v. Silverman*, 109 Md. 341, 355, 71 A. 962, 964 (1909) (quoting from *Walker v. Cronin*, 107 Mass. 555, 562 (1871)):

> '(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.' "

Here, the only contract at issue is the Loyalty Rewards Program Terms and Conditions, which, as noted above, is terminable at will.  Thus, Plaintiff's claim in Count 4 of the Second Amended Complaint should be analyzed under the broader form of the tort.  Taking that framework into account, Plaintiff simply cannot satisfy the elements to state a claim against Westmont.  Even if Plaintiff's allegations are accepted as true, Marriott cancelled Plaintiff's Account as a result of his "fraud," not due to any reports of a verbal dispute or altercation that occurred at the Westin Hotel, or any other information that may have been provided by Westmont.  Thus, is there no causal connection between any alleged acts of Westmont and the ultimate cancellation of Plaintiff's Account, which again, Marriott had the explicit right to do at any time, for any reason.

Moreover, even if Westmont did report to Marriott the verbal altercation that Plaintiff initiated with the Westin staff, such conduct cannot be said to have been done without right or justifiable cause, which is necessary to establish the tort of interference with contractual relations. The type of independently wrongful and malicious conduct that would support a claim in this scenario includes "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith."  *See Alexander & Alexander*, 336 Md. at 657 (citation omitted). Westmont's legitimate business actions to inform Marriott of inappropriate, abusive and/or hostile conduct of Loyalty Rewards members (activity that Marriott reserves the right to monitor on the accounts of Program members (*see* Exh. A, § 9.1)) cannot possibly be construed as maliciously wrongful conduct akin to violence, intimidation, defamation or bad faith criminal prosecution.

Thus, given that Plaintiff cannot establish the elements of tortious interference with contractual relations by Westmont, Count 4 of the Second Amended Complaint should be dismissed, with prejudice and without further leave to amend.

## IV.    <u>Conclusion</u>

For the reasons set forth in Defendants' Motion and herein, Defendants Marriott International, Inc. and Westmont Hospitality Group, Inc., respectfully request that this Honorable Court dismiss Plaintiff's Second Amended Complaint in its entirety for failure to state a claim pursuant to FRCP 12(b)(6).

Respectfully submitted,

*/s/ Ashley L. Voli*
Ashley L. Voli, Bar No. 18642
Lewis Brisbois Bisgaard & Smith LLP
100 Light Street, Suite 1300
Baltimore, Maryland 21202
Telephone: 410.525.6396
Facsimile: 410.779.3910
E-Mail: Ashley.Voli@lewisbrisbois.com
***Attorney for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of December, 2025, a copy of the foregoing *Memorandum of Law in Support of its Motion to Dismiss* was served via CM/ECF on:

Lawrence A. Katz, Esquire
Lento Law Group
1814 East Route 70-Suite 321
Cherry Hill, NJ 08003
*Attorney for Plaintiff*

*/s/ Ashley L. Voli*
Ashley L. Voli