## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN GROFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 8:25-cv-02031-DLB |
| | ) | |
| V. | ) | |
| | ) | |
| MARRIOTT INTERNATIONAL, INC., | ) | |
| WESTMONT HOSPITALITY GROUP, | ) | |
| INC., JOHN DOES 1–10 | ) | |
| (fictitious names), and ABC | ) | |
| ENTITIES 1–10 (fictitious entities), | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff John Groff, by and through undersigned counsel, hereby submits this Opposition to the Motion to Dismiss the Second Amended Complaint filed by Defendants Marriott International, Inc. and Westmont Hospitality Group, Inc. pursuant to Federal Rule of Civil Procedure 12(b)(6). As set forth more fully below, Defendants' Motion improperly asks this Court to resolve disputed factual issues, credit Defendants' version of events, and construe contractual provisions in their favor at the pleading stage. Because the Second Amended Complaint plausibly alleges claims for relief under applicable law, Defendants' Motion should be denied in its entirety.

## I.    INTRODUCTION.

Defendants' Motion to Dismiss asks this Court to do exactly what Rule 12(b)(6) forbids: resolve disputed facts, credit Defendants' self-serving explanations, and treat contractual

discretion as absolute immunity from liability. At the pleading stage, Defendants are not entitled to any of that.

Plaintiff does not allege that Marriott lacked authority to administer its loyalty program. Rather, the Second Amended Complaint alleges that Defendants exercised that authority arbitrarily, in bad faith, and through false and misleading conduct, including branding Plaintiff with an unsubstantiated "fraud" designation, stripping him of 643,412 loyalty points without notice or investigation, and doing so based on a false report transmitted by Westmont. These allegations, which must be accepted as true at this stage, are more than sufficient to state claims under the Maryland Consumer Protection Act, Maryland contract law, and Maryland tort law.

Defendants' Motion rests almost entirely on selective quotations from the Marriott Bonvoy Terms and Conditions and the assertion that "sole discretion" language categorically forecloses all claims as a matter of law. That assertion is incorrect. Under Maryland law, contractual discretion is constrained by the implied covenant of good faith and fair dealing, and discretionary authority does not authorize deceptive practices, false accusations of fraud, or tortious interference by third parties. Whether Defendants acted honestly, reasonably, or in good faith is a fact question, not a pleading deficiency.

Equally flawed is Defendants' repeated effort to recharacterize Plaintiff's allegations as a mere disagreement with a termination decision. The Second Amended Complaint alleges far more: the knowing communication of false misconduct, the application of a stigmatizing "fraud" label unsupported by any investigation, the deprivation of valuable earned benefits, and the concealment of material facts from a consumer who relied on Defendants' representations. These are precisely the types of allegations that courts routinely hold sufficient to survive dismissal.

Defendants seek dismissal with prejudice by rewriting the Complaint and asking the Court to assume that their conduct was justified, truthful, and contractually permitted. Rule 12 does not permit that result. Because Plaintiff has plausibly alleged each element of his claims, and because Defendants' arguments depend on factual determinations inappropriate at this stage, the Motion to Dismiss should be denied in its entirety. Alternatively, should the Court identify any pleading deficiency, dismissal with prejudice would be improper and leave to amend must be granted.

## II.      FACTUAL BACKGROUND.

Plaintiff John Groff is a long-standing Marriott Bonvoy member who, through years of frequent paid stays and substantial qualifying spend, attained Ambassador Elite status—the highest tier within the Marriott Bonvoy loyalty program. (Second Am. Compl. ("SAC") ¶¶ 7, 12.) Under the Marriott Bonvoy Terms & Conditions, Ambassador Elite status requires at least 100 qualifying nights and a minimum annual qualifying spend, reflecting a significant financial and loyalty commitment to Marriott-branded properties. *See* Defs.' Ex. A § 4.2.b.v.

On or about November 30, 2023, Plaintiff booked and stayed at the Westin Mount Laurel Hotel in Mount Laurel, New Jersey, checking out on or about December 4, 2023. (SAC ¶ 8.) Westin properties are participating Marriott Bonvoy properties, and qualifying stays at Westin locations earn loyalty points and elite night credits under Defendants' Exhibit A. *See* Defs.' Ex. A §§ 1.2.a.xii, 2.1.a.

Plaintiff denies engaging in any abusive, hostile, or inappropriate conduct during this stay. (SAC ¶¶ 9, 15.) No contemporaneous incident report, guest complaint, or law-enforcement involvement was disclosed to Plaintiff at any time.

At a date and time presently unknown to Plaintiff, Defendant Westmont Hospitality

Group, Inc., the operator of the Westin Mount Laurel, communicated to Marriott that Plaintiff allegedly engaged in a verbal dispute with hotel staff. (SAC ¶ 9.) Plaintiff alleges that this report was false, unfounded, and made with knowledge that Plaintiff's Bonvoy account and elite status were governed by Marriott's loyalty program. (SAC ¶¶ 10, 43–44.) Defendants' Exhibit A does not require Marriott to accept such accusations as true or to impose punitive action without substantiation; rather, it provides that Marriott *may* monitor accounts for compliance. *See* Defs.' Ex. A § 9.1.

On December 11, 2023, Marriott unilaterally deducted 643,412 loyalty points from Plaintiff's Bonvoy account and applied the notation "Fraud Remaining Balance Remove." (SAC ¶ 11.) Plaintiff was not notified in advance that his points were at risk of forfeiture, nor was he provided any opportunity to respond to or contest the accusation before the points were removed. (SAC ¶¶ 13, 21.)

Although Defendants' Exhibit A states that loyalty points are "the sole property of the Company," it simultaneously recognizes that members earn points through qualifying stays and may redeem them for specific goods and services, including hotel stays and other benefits. *See* Defs.' Ex. A §§ 1.7.b.i, 3.1–3.2. Plaintiff alleges that he accumulated the deducted points through paid stays and that he was entitled to their immediate use and redemption at the time they were removed. (SAC ¶¶ 29–30.)

Defendants rely on provisions in Exhibit A allowing Marriott to cancel or suspend accounts "in its sole discretion." *See* Defs.' Ex. A § 1.7.a.ii. Those provisions, however, are predicated on Marriott's belief that a member engaged in specified misconduct, including fraudulent or abusive conduct. Plaintiff alleges that no such misconduct occurred and that Marriott applied the "fraud" designation without investigation, evidence, or disclosure of

any factual basis. (SAC ¶¶ 15, 21.)

Notably, Defendants' Exhibit A does not define the phrase "Fraud Remaining Balance Remove," nor does it describe any procedure by which a member may challenge or appeal a fraud designation once imposed. *See generally* Defs.' Ex. A. Plaintiff alleges that the use of this stigmatizing label falsely implied criminal or dishonest conduct. (SAC ¶¶ 21, 23.).

As a result of Defendants' actions, Plaintiff lost the use of more than 643,000 loyalty points, forfeited the benefits associated with Ambassador Elite status, and suffered reputational harm from being branded as having committed "fraud." (SAC ¶¶ 16, 24, 35, 48.) Plaintiff alleges that the value of the lost points and benefits exceeds $75,000, exclusive of interest and costs. (SAC ¶¶ 16, 24.)

## III.    LEGAL STANDARD.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the plaintiff's claims or the defendant's factual defenses. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). At this stage, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

Dismissal is appropriate only where the complaint fails to allege facts that, if proven, would entitle the plaintiff to relief. *Twombly*, 550 U.S. at 570. A complaint need not establish a probability of success; it need only state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. In evaluating plausibility, courts must disregard legal conclusions, but must credit factual allegations, even where they are disputed by the defendant or unlikely to prevail at later stages of litigation. *Id.* at 679.

Where, as here, Defendants rely on contractual provisions to support dismissal, the Court may consider documents integral to and explicitly relied upon in the complaint, such as the Marriott Bonvoy Terms and Conditions attached as Defendants' Exhibit A, provided their authenticity is not disputed. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). However, the Court may not resolve factual disputes, draw inferences in favor of the movant, or adopt Defendants' interpretation of contractual language where the complaint plausibly alleges bad faith, deceptive conduct, or tortious interference. *Id.* at 166–67.

Claims sounding in fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead the "time, place, and contents" of the alleged misrepresentation, as well as the identity of the speaker and what was obtained as a result. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019). Rule 9(b), however, does not require a plaintiff to prove intent, justify the defendant's conduct, or negate contractual defenses at the pleading stage. *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).

Finally, dismissal with prejudice is a severe remedy that is disfavored at the Rule 12 stage, particularly where the plaintiff has plausibly alleged claims and any perceived deficiencies may be cured through amendment or discovery. *Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999). If the Court determines that any portion of the Second Amended Complaint is deficient, the appropriate remedy is leave to amend—not dismissal with prejudice.

## IV.   <u>ARGUMENT.</u>

Defendants are correct that, in resolving a Rule 12(b)(6) motion, the Court may consider documents that are integral to the complaint and whose authenticity is not disputed, including the Marriott Bonvoy Loyalty Program Terms and Conditions attached as Defendants' Exhibit A. *See Goines*, 822 F.3d 159, 166 (4th Cir. 2016); *Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d

689, 699 (D. Md. 2014). Plaintiff does not dispute that the Terms and Conditions governed his participation in the Marriott Bonvoy program or that they are properly before the Court for purposes of this Motion.

Defendants' reliance on Exhibit A, however, does not resolve the Rule 12 inquiry. While the Court may consider an integral contract, it may not credit Defendants' interpretation of that contract, resolve disputed factual issues, or draw inferences in Defendants' favor at the pleading stage. *Goines*, 822 F.3d at 166–67. As courts in this District have repeatedly emphasized, the purpose of Rule 12(b)(6) is to test the legal sufficiency of the pleadings—not to adjudicate the truth of a defendant's asserted justifications or defenses. *See, e.g.*, *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 435–36 (D. Md. 2014) (denying dismissal where defendants relied on contractual and statutory defenses that depended on factual determinations inappropriate at the pleading stage).

Plaintiff cites the Terms and Conditions to establish the existence of a contractual relationship and the framework under which Defendants acted—not to concede that Defendants exercised their contractual discretion lawfully, in good faith, or without deceptive or tortious conduct. Where, as here, a plaintiff references a contract to show the source of duties and authority, the Court may not treat the contract as conclusively resolving whether the defendant's conduct complied with law or was exercised in good faith. *Goines*, 822 F.3d at 167.

Accordingly, although Exhibit A is properly before the Court, it does not foreclose Plaintiff's claims as a matter of law. Whether Defendants acted consistently with applicable statutory duties, contractual obligations, and common-law limitations on the exercise of discretion are issues that cannot be resolved on a motion to dismiss and are addressed below with respect to each cause of action.

**A. Plaintiff Has Adequately Stated a Claim for Violation of the MCPA.**

Defendants' argument rests on a false premise: that because the Marriott Bonvoy Terms and Conditions reserve discretion to cancel a member's account, any claim under the Maryland Consumer Protection Act ("MCPA") is categorically foreclosed. That is not the law, and it is not what Plaintiff alleges.

Plaintiff does not contend that Marriott lacked contractual authority to administer or terminate loyalty accounts in the abstract. Rather, Plaintiff alleges that Marriott engaged in deceptive and misleading conduct in the manner in which it exercised that authority—specifically, by falsely branding Plaintiff with a "fraud" designation, confiscating 643,412 accrued loyalty points without substantiation, and doing so without disclosure of any factual basis. (SAC ¶¶ 11–16, 19–24.) Maryland courts have repeatedly recognized that the existence of contractual discretion does not insulate a merchant from liability under the MCPA where the exercise of that discretion itself is alleged to be deceptive or misleading. *See, e.g.*, *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796–97 (D. Md. 2013) (MCPA claim survives where plaintiff alleges deceptive practices notwithstanding contractual framework).

To state a claim under the MCPA, a plaintiff must plead an unfair or deceptive practice, reliance, and resulting injury. *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018). Plaintiff has done so. The Second Amended Complaint alleges that Marriott represented that loyalty points earned through paid stays were legitimate rewards redeemable for lodging and benefits, and that Ambassador Elite members were entitled to enhanced privileges so long as program rules were followed. (SAC ¶ 19.) Plaintiff further alleges that Marriott applied a "Fraud Remaining Balance Remove" designation—an undefined and stigmatizing label not contemplated

or explained in the Terms and Conditions—thereby implying misconduct that did not occur. (SAC ¶¶ 15, 21.)

Defendants' reliance on *Spaulding v. Wells Fargo Bank, N.A.* is misplaced. 714 F.3d 769, 781 (D. Md. 2013). Unlike *Spaulding*, this case does not involve dissatisfaction with discretionary loan-modification decisions or future benefits. Plaintiff alleges the affirmative use of a false and misleading fraud designation to justify the seizure of accrued benefits already earned. Courts in this District have recognized that such allegations state a plausible MCPA claim where the challenged conduct involves misleading explanations, false labels, or concealment of material facts. *See Mohamed v. Bank of Am., N.A.*, 771 F. Supp. 3d 695, 707–08 (D. Md. 2025) (MCPA claim plausibly alleged where bank used misleading fraud-related designations and failed to provide truthful explanations).

Nor does Rule 9(b) require dismissal. Plaintiff pleads with particularity the time (December 11, 2023), content ("Fraud Remaining Balance Remove"), actor (Marriott), and result (loss of 643,412 points and related benefits). (SAC ¶¶ 11–16.) This is more than sufficient to place Marriott on notice of the alleged deceptive conduct. Rule 9(b) does not require Plaintiff to prove fraud at the pleading stage, only to allege it with sufficient detail to permit a response. *See Howes v. Wells Fargo Bank, N.A.*, 2016 WL 6875879, at *6–7 (D. Md. Nov. 22, 2016) (denying dismissal where complaint adequately identified the substance and effect of the alleged misrepresentation).

Finally, Defendants mischaracterize Plaintiff's claim as a challenge to account cancellation itself. Plaintiff does not allege that cancellation alone violates the MCPA; he alleges that Marriott engaged in deceptive conduct in connection with the cancellation by falsely labeling him a fraud and concealing the basis for that determination. The MCPA squarely targets such conduct, even where a contractual relationship exists. *See Currie*, 950 F. Supp. 2d at 796–97. Accordingly,

9

Plaintiff has plausibly stated a claim for violation of the MCPA, and Defendants' motion to dismiss Count 1 should be denied.

**B. Plaintiff has Plausibly Alleged Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Defendants' Section B argument again rests on the mistaken premise that contractual discretion operates as a categorical shield against liability. Maryland law does not support that proposition. While discretion may be conferred by contract, the manner in which that discretion is exercised remains subject to the implied covenant of good faith and fair dealing, particularly where a plaintiff alleges that discretion was exercised dishonestly or as a pretext to deprive the other party of earned contractual benefits.

Plaintiff does not dispute that the Marriott Bonvoy Terms and Conditions constitute an express written contract. (SAC ¶ 27.) Nor does Plaintiff allege that Marriott was categorically prohibited from cancelling his account under all circumstances. Rather, Plaintiff alleges that Marriott breached the contract by invoking its discretionary authority in bad faith, including by falsely designating Plaintiff as having committed "fraud" and using that designation as the justification to confiscate accrued loyalty benefits already earned through paid stays. (SAC ¶¶ 11–16, 29–30.)

Maryland courts have consistently held that although the implied covenant of good faith and fair dealing does not create new contractual obligations, it does constrain the exercise of discretionary contractual rights. A party may not exercise discretion in a manner that is arbitrary, dishonest, or intended to frustrate the other party's right to receive the fruits of the agreement. *See Blondell v. Littlepage*, 413 Md. 96, 114 (2010); *Eastern Shore Mkts., Inc. v. J.D. Assocs., Ltd.*, 213 F.3d 175, 184 (4th Cir. 2000).

Here, Plaintiff does not seek to impose procedural requirements that appear nowhere in the contract simply because they would be "logical or wise." Rather, Plaintiff alleges that Marriott's stated reason for exercising its discretion—fraud—was false and unsubstantiated, and that the discretion clause was used as a pretext to strip Plaintiff of the very benefits the contract promised him for compliant participation in the program. (SAC ¶¶ 15, 21, 30.) Whether Marriott acted honestly and in good faith in making that determination is a factual question that cannot be resolved on a motion to dismiss.

Courts in this District have repeatedly recognized that claims for breach of the implied covenant are plausibly stated where a defendant allegedly uses contractual discretion to evade payment or deprive the plaintiff of earned benefits. *See View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 626–27 (D. Md. 2014) (denying dismissal where plaintiff plausibly alleged that defendant exercised contractual discretion in bad faith to avoid paying compensation owed). Likewise, in *Tate v. Am. Gen. Life Ins. Co.*, this Court emphasized that disputes over whether contractual authority was exercised consistently with the parties' reasonable expectations are generally not resolvable at the pleading stage. 627 F. Supp. 3d 480, 493–95 (D. Md. 2022).

Defendants' reliance on *Parker v. Columbia Bank* and *Margolis v. Sandy Spring Bank* is misplaced. 91 Md.App. 346, 604 A.2d 521, 531 (1992); 221 Md. App. 703, 723 (2015). Those cases stand for the uncontroversial proposition that courts will not rewrite contracts or impose affirmative obligations not bargained for—not that a party may act in bad faith with impunity whenever discretion is mentioned. Plaintiff's claim fits squarely within the recognized boundaries of the implied covenant: that Marriott could not falsely brand Plaintiff as a fraud and invoke discretion as a cover to confiscate accrued benefits.

At the pleading stage, Plaintiff is not required to prove bad faith; he must plausibly allege it. The Second Amended Complaint does so by alleging that Marriott applied a stigmatizing fraud designation without substantiation and used it to cancel Plaintiff's account and seize accrued loyalty points. Accepting those allegations as true, Plaintiff has stated a viable claim for breach of contract and breach of the implied covenant of good faith and fair dealing. Accordingly, Defendants' motion to dismiss Count 2 should be denied.

**C. Plaintiff Has Plausibly Alleged Conversion and, in the Alternative, Unjust Enrichment.**

Defendants' Section C argument again seeks dismissal by collapsing factual and legal distinctions that are not resolved at the pleading stage. Although Plaintiff acknowledges that the Terms and Conditions state that loyalty points are the "property of the Company," that provision does not, as a matter of law, foreclose a conversion claim where Plaintiff alleges a superior contractual right to immediate possession and use of accrued benefits and a wrongful deprivation of that right.

Under Maryland law, conversion is not limited to cases of absolute ownership. Rather, the tort turns on whether the plaintiff had actual possession or the right to immediate possession, and whether the defendant exercised dominion or control inconsistent with that right. *See Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 64 (1986); *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 262–63 (2004). Plaintiff alleges that he earned the loyalty points through paid stays, had an immediate contractual right to redeem them for lodging and benefits, and was deprived of that right through Marriott's unilateral and allegedly wrongful conduct. (SAC ¶¶ 29–36.) Those allegations are sufficient at the pleading stage.

Defendants' reliance on *Yuan v. Johns Hopkins University* is misplaced. *Yuan* involved employer-owned research materials governed by a specific institutional ownership policy, where the plaintiff had no contractual or possessory right to continued access following termination. 227 Md. App. 554, 565–66 (2016). Here, by contrast, Plaintiff alleges a vested and immediately exercisable right to redeem accrued loyalty points earned through completed transactions, prior to any legitimate forfeiture. Whether Plaintiff's possessory interest was sufficient to support a conversion claim—and whether Marriott's deprivation was wrongful—are fact-intensive questions not resolved by reciting ownership language in a contract.

Plaintiff has plausibly alleged that Marriott exercised dominion over accrued benefits in a manner inconsistent with Plaintiff's contractual rights, which is sufficient to survive dismissal at this stage. Defendants' alternative argument against unjust enrichment likewise fails at the pleading stage. While Maryland law generally bars unjust enrichment where an express contract governs the subject matter, plaintiffs are permitted to plead unjust enrichment in the alternative where the scope or lawful application of the contract is disputed. Plaintiff alleges that Marriott retained the benefit of Plaintiff's paid stays while denying him the bargained-for rewards through allegedly wrongful conduct. (SAC ¶ 39.) Maryland courts recognize unjust enrichment as a viable alternative theory where a defendant allegedly retains benefits under circumstances that would make retention inequitable. *See Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 269–70 (2007). Accordingly, Plaintiff has plausibly stated a claim for conversion, or alternatively unjust enrichment, and Defendants' motion to dismiss Count 3 should be denied.

**D. Plaintiff has Plausibly Alleged Tortious Interference with Contractual Relations.**

Defendants' Section D argument again improperly resolves factual disputes and draws inferences in Westmont's favor that are not permitted at the pleading stage. Accepting Plaintiff's

allegations as true, as the Court must on a Rule 12(b)(6) motion, Plaintiff has plausibly stated a claim for tortious interference with contractual relations under Maryland law.

Plaintiff alleges that Westmont—a non-party to the Marriott Bonvoy loyalty agreement—knowingly communicated false or unfounded allegations regarding Plaintiff's conduct to Marriott, with the intent and effect of disrupting Plaintiff's contractual relationship with Marriott. (SAC ¶¶ 9–11, 43–44.) Plaintiff further alleges that Marriott relied on Westmont's communication in branding Plaintiff a "fraud" and cancelling his loyalty account, resulting in the loss of accrued benefits. (Id. ¶¶ 11, 16, 35.) These allegations are sufficient to plead intentional interference and resulting damage.

Defendants correctly observe that where a contract is terminable at will, Maryland law applies the broader form of the tort, which requires wrongful or malicious conduct. *See Macklin v. Robert Logan Assocs.*, 334 Md. 287, 297–99 (1994); *Blondell*, 413 Md. 96, 125 (2010). But Defendants misapply that standard by assuming—contrary to the pleadings—that Westmont's conduct was truthful, justified, and benign. Plaintiff alleges the opposite: that Westmont conveyed false information with knowledge that it would adversely affect Plaintiff's relationship with Marriott. (SAC ¶¶ 9–10, 15.)

Maryland courts have long recognized that tortious interference may be predicated on false statements or other independently wrongful conduct, including defamation or injurious falsehood. *See Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 657 (1994); Willner v. Silverman, 109 Md. 341, 355 (1909). Whether Westmont's communication constituted a legitimate business report or an injurious falsehood made without justification is a fact-intensive inquiry that cannot be resolved on a motion to dismiss.

Defendants' causation argument likewise fails at this stage. Plaintiff alleges that Westmont's report precipitated Marriott's decision to cancel his account and apply a fraud designation. (SAC ¶¶ 9–11.) Maryland law does not require Plaintiff to prove a breach of contract or exclusive causation at the pleading stage. A claim lies where a defendant intentionally and wrongfully interferes with contractual rights or expectations, even if the contract is terminable at will and even if termination occurs through a contractual mechanism. *See Lake Shore Investors v. Rite Aid Corp.*, 67 Md. App. 743, 750–54 (1986) (tortious interference may lie where a defendant wrongfully causes termination or cancellation without breach).

Finally, Defendants' assertion that Westmont acted "with right or justifiable cause" again assumes facts not found in the pleadings. Plaintiff alleges that Westmont's report was false and improper. If proven, such conduct would constitute wrongful means sufficient to satisfy Maryland's tortious-interference standard. At the pleading stage, Plaintiff is not required to disprove Defendants' asserted justifications or establish the absence of privilege. Accordingly, Plaintiff has plausibly alleged tortious interference with contractual relations, and Defendants' motion to dismiss Count 4 should be denied.

### V. <u>CONCLUSION.</u>

For the foregoing reasons, Plaintiff has plausibly alleged claims for violation of the Maryland Consumer Protection Act, breach of contract and breach of the implied covenant of good faith and fair dealing, conversion and unjust enrichment, and tortious interference with contractual relations. Defendants' Motion improperly asks this Court to resolve disputed factual issues, credit Defendants' version of events, and treat contractual discretion as absolute immunity from statutory and tort liability—relief that is not available at the pleading stage. Accordingly, Defendants' Motion to Dismiss the Second Amended Complaint should be denied in its entirety. In the

alternative, should the Court determine that any claim is deficient, dismissal with prejudice would be inappropriate and Plaintiff respectfully requests leave to amend.


Dated: <u>December 15, 2025</u>   LENTO LAW GROUP, P.C.


          *<u>s/ Lawrence A. Katz, Esq.</u>*
          LAWRENCE A. KATZ, ESQUIRE
          3000 ATRIUM WAY – SUITE 200
          MOUNT LAUREL, NEW JERSEY
          08054
          (T) (856) 652-2000
          (F) (856) 375-1010
          lakatz@lentolawgroup.com