**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOHN GROFF, | * | |
| *Plaintiff*, | * | |
| v. | * | Case No. 8:25-cv-02031-DLB |
| MARRIOTT WORLDWIDE CORPORATION, et al. | * | |
| *Defendant*s. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants, Westmont Hospitality Group, Inc. (hereinafter "Westmont") and Marriott International, Inc., improperly sued as Marriott Worldwide Corporation (hereinafter "Marriott"), by and through their attorneys, Ashley L. Voli, and Lewis Brisbois Bisgaard & Smith, LLP, pursuant to FRCP 12(b)(6), hereby file this Reply to Plaintiff's Opposition to Motion to Dismiss Plaintiff's Second Amended Complaint and in support thereof state as follows:

I.     **Plaintiff's Opposition was filed late and should not be considered**.

As a threshold matter, Plaintiff's Opposition was filed late. Defendants filed their Motion to Dismiss on December 4, 2025, in accordance with this Court's Order. Pursuant to Local Rule 105, Plaintiff's Opposition was due to be filed within 14 days thereafter, or no later than December 18, 2025. However, Plaintiff did not file his Opposition until December 20, 2025. Accordingly, the Opposition was late and this Court should decline to consider it when issuing a ruling on Defendants' Motion.

**II.      Plaintiff's Second Amended Complaint does not state a claim for violation of the MCPA.**

In his Opposition, Plaintiff misconstrues Defendants' arguments set forth in their Motion. Defendants do not contend that the Loyalty Program Terms and Conditions "categorically foreclose[]" any claim (Opp. at p. 8); rather, Defendants argue that Plaintiff has failed to state a claim for which relief may be granted for alleged violation of the MCPA by Marriott in the Second Amended Complaint.  More specifically, Plaintiff has not set forth any specific misrepresentation that Marriott allegedly made to him and upon which he relied, which then caused him harm, as required under clear Maryland law.

Plaintiff asserts that he harbored an erroneous belief that "loyalty points would accrue and be redeemable so long as Plaintiff complied with program rules."  (SAC ¶ 19).  Nowhere in the Terms and Conditions does such a statement appear – Plaintiff does not cite to any such provision in the Terms and Conditions, nor does Plaintiff identify an occasion on which a Marriott representative made such a statement to him.  Rather, as repeatedly referenced in Defendants' Motion, the Terms and Conditions provided that Marriott could, in its sole discretion, cancel accumulated points, suspend Program benefits and/or cancel a member's account for <u>any reason</u>; the non-exhaustive list of potential reasons, provided as examples only, include circumstances in which Marriott believed that the member acted in an inappropriate, fraudulent, abusive or hostile manner and/or engaged in misconduct or wrongdoing with respect to the Program.  (*See* Exh. A, § 1.7).  Plaintiff had notice of these explicit provisions from the outset of his participation in the Loyalty Rewards Program and his participation constituted his consent.  Plaintiff cannot use his own apparent misunderstanding of the unambiguous Terms and Conditions to attempt to support an MCPA claim against Marriott.

Further, none of the cases cited in Plaintiff's Opposition support his contention that his MCPA claim can survive a dispositive motion when Marriott acted in accordance with explicit contractual terms of which Plaintiff had notice.  In *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796-99 (D. Md. 2013), the plaintiffs set forth a number of alleged statements made to them by Wells Fargo representatives separate and apart from any contractual documents.  The *Currie* Court granted in part and denied in part the motion to dismiss, reasoning that many of the statements did not constitute false misrepresentations that were relied upon by the plaintiffs, as required to state a claim.  *See id.*  The Court's decision had nothing to do with the "contractual framework" between the parties, as Plaintiff's Opposition suggests.  (Opp. at p. 8).

Plaintiff further contends that *Mohamed v. Bank of Am., N.A.*, 771 F. Supp. 3d 695 (D. Md. 2025), held that an MPCA claim was plausibly alleged where the bank used misleading fraud-related designations and failed to provide truthful explanations.  (Opp. at p. 9).  However, the *Mohamed* Court actually held that the plaintiff had failed to state his MCPA claim, premised upon alleged misrepresentations by the bank, with the required specificity under Rule 9(b) and also failed to alleged that he relied upon such misrepresentations.  *Mohamed*, 771 F. Supp. 3d at 707. The Court also determined that Plaintiff's MCPA claim could not be supported by breach of contract, determining that the plaintiff "does not allege any facts that suggest that Defendant's alleged failure to abide by either the terms of the Cardholder Agreement or the terms of the Benefits Administration Contract ("Benefits Contract") executed between the Bank and the State of Maryland gave rise to any misrepresentation or unfair or deceptive practice."  *Id.* at 708.

Plaintiff has now had multiple opportunities to amend his Complaint and he has not stated a claim for violation of the MCPA by Marriott.  There is no specific misrepresentation set forth by Plaintiff that was made by Marriott, either within the Loyalty Program Terms and Conditions or

169255712.1   3

elsewhere, and upon which Plaintiff relied to his detriment.  Rather, Plaintiff's claim in Count 1 is premised upon Marriott's cancellation of his Account – an action that Plaintiff agreed Marriott had the right to take, with immediate effect, without notice and in its sole discretion.  The only appropriate remedy here is a dismissal of Count 1 with prejudice, and without leave to further amend, for failure to state a claim.

III.    **Plaintiff cannot state a claim for breach of contract**.

The cases cited in Plaintiff's Opposition do not support his contention that Marriott breached an implied covenant of good faith and fair dealing under Maryland law.  More specifically, *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588 (D. Md. 2014), was a case that applied Massachusetts contract law to the facts, not Maryland law.  Further, the *View Point* case did not involve the exercise of contractual discretion similar to the facts at issue in this case.  Rather, the *View Point* Court determined that a single cause of action for alleged breach of the implied covenant of good faith and fair dealing could survive a motion to dismiss under Massachusetts law because the plaintiff had pleaded sufficient facts regarding the conduct of the defendant that allegedly frustrated the contractual intentions of the parties: "communicating with View Point about HMA; requesting an update regarding View Point's leads and accepting contact information supplied by Radding; telling View Point in May 2010 that it 'appreciate[d View Point's] efforts,' that it 'love[d] the introductions' View Point was making, and that View Point's 'leads have been great'; and, in February 2010, encouraging View Point to keep HMA on its 'radar' and advising it to contact HMA twelve months later." *Id.* at 609.  No such detailed recitation of <u>facts</u> is present in Plaintiff's Second Amended Complaint.  Rather, Plaintiff relies on his sole allegation, unsubstantiated by any <u>facts</u>, that the "fraud" notation made by Marriott on Plaintiff's cancelled account (for which Marriott had no obligation under the Terms and Conditions

to offer any explanation) was allegedly false. There can be no doubt that such threadbare allegations are insufficient to satisfy Rule 9(b).

Indeed, the Court in *View Point* dismissed the plaintiff's breach of contract claim and the second claim for alleged breach of implied covenant of good faith and fair dealing for plaintiff's failure to set forth sufficient facts to withstand a dispositive motion. The Court explained:

> In sum, plaintiff pleads no facts in support of its allegation that Athena delayed its contract with HMA. The allegations it offers are insufficient to survive dismissal. *See Iqbal, supra*, 556 U.S. at 679, 129 S.Ct. 1937 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' ") (quoting Fed.R.Civ.P. 8(a)(2)); *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir.2011) ("To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiff's '[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.' ") (quoting *Twombly, supra*, 550 U.S. at 555, 127 S.Ct. 1955).

*Id.* at 608.

The case of *Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp. 3d 480 (D. Md. 2022), is cited in Plaintiff's Opposition for the proposition that "disputes over whether contractual authority was exercised consistently with the parties' reasonable expectations are generally not resolvable at the pleading stages." (Opp. at p. 11). The *Tate* case does not contain any such holding. Rather, *Tate* involved alleged ambiguity of various contractual terms in a life insurance policy that the Court held could not be resolved on a motion to dismiss but, instead, required discovery. *Tate*, 627 F. Supp. 3d at 491-92. The *Tate* case bears no relation to the allegations at issue in the instant case and the lack of factual support for Plaintiff's bald assertions against Marriott, especially in light of the clear and unambiguous Terms and Conditions governing the parties' relationship.

In short, this Court has ample basis under the law to determine that Plaintiff's claim for alleged breach of contract against Marriott should be dismissed for failing to state a claim. Plaintiff

has abandoned any argument that Marriott breached the Loyalty Program Terms and Conditions, and the Second Amended Complaint is devoid of any factual allegations in support of an assertion that Marriott breached an implied covenant of good faith and fair dealing. Plaintiff's contentions that Marriott acted in bad faith by failing to provide notice, conduct an investigation, develop "substantiated evidence" and provide Plaintiff with an opportunity to contest Marriott's decision (SAC ¶¶ 29-30) are precisely the types of additional obligations that Maryland Courts routinely decline to impose when a contract does not call for them. *See Blondell v. Littlepage*, 413 Md. 96, 114 (2010); *Margolis v. Sandy Spring Bank*, 221 Md. App. 703, 723 (2015). Accordingly, Plaintiff's claim for alleged breach of contract by Marriott fails as a matter of law and should be dismissed, with prejudice and without leave to further amend.

IV.    **Plaintiff cannot state a claim for conversion or unjust enrichment**.

Plaintiff concedes – as he must – that the relationship between himself and Marriott is governed by the Loyalty Program Terms and Conditions. Accordingly, there is no factual dispute here and Plaintiff's legal arguments are unavailing and contrary to clearly applicable Maryland law. By contract, the loyalty rewards points are indisputably the property of Marriott. (Exh. A, § 1.7.b). Marriott cannot convert its own property as a matter of law. *See Yuan v. Johns Hopkins University*, 452 Md. 436, 465-66 (2017). There is no "superior contractual right" (Opp. at p. 12) that Plaintiff has in light of the unambiguous contract that governs the parties in this case. Thus, Plaintiff's claim for alleged conversion by Marriott must fail.

Again, Plaintiff has conceded that a contract exists – the Loyalty Program Terms and Conditions appended to Defendants' Motion as Exhibit A. Accordingly, there can be no claim for unjust enrichment, as a matter of law, when a valid contract is in place. *County Com'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000) (quoting *FLF, Inc. v. World*

*Publications, Inc.*, 999 F. Supp. 640, 642 (1998)).  Contrary to the inference in Plaintiff's Opposition, *Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 267-68 (2007), does <u>not</u> stand for the proposition that a claim for unjust enrichment may proceed when there is an express contract between the parties.  Accordingly, each theory posited under Count 3 of the Second Amended Complaint is subject to dismissal, with prejudice and without leave to further amend.

**V.    Plaintiff has not stated a plausible claim for tortious interference by Westmont.**

As the Court in *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013), explained, "The Court need not . . . accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979)."  Here, Plaintiff's Second Amended Complaint is devoid of any factual allegations to support his claim for alleged tortious interference by Westmont.  Rather, the Second Amended Complaint relies upon mere speculation, which is insufficient as a matter of law.

Plaintiff asserts that, following his stay at the Westin Hotel, "at a date and time presently unknown to Plaintiff, Defendant Westmont Hospitality Group, Inc., which owns or operates the Westin Hotel, arbitrarily and without proper cause reported to Marriott that Plaintiff had engaged in an alleged verbal dispute with hotel staff."  (SAC ¶ 9).  Rule 9(b) clearly requires more than bald assertions that an unidentified employee of Westmont communicated unknown details of an alleged verbal dispute to an unidentified employee of Marriott at an unknown date and time.  Plaintiff has absolutely no facts to support that such an alleged communication occurred or any

169255712.1    7

substantive details of the alleged communication.  His claim cannot withstand a preliminary dispositive motion.

Moreover, there is no plausible connection between Plaintiff's speculative allegations of a reported verbal altercation with the Westin staff during the Lento Law Group holiday gathering and the alleged notation made by Marriott on Plaintiff's Account of "fraud – remove remaining balance."  Thus, even accepting Plaintiff's allegations as true, there must be some causal connection between the conduct alleged in the Second Amended Complaint that Plaintiff contends resulted in harm to him.  There can be no reasonable dispute over the lack of any plausible connection between the alleged verbal altercation with hotel staff and the cancellation of Plaintiff's Account by Marriott for "fraud."  Plaintiff's allegations simply do not satisfy the pleading requirements necessary to state a claim against Westmont for alleged tortious interference and Count 4 must be dismissed, with prejudice and without leave to further amend.

V.     **Conclusion**

For the reasons set forth in Defendants' Motion to Dismiss, supporting Memorandum of Law and herein, Defendants respectfully request that this Court dismiss Plaintiff's Second Amended Complaint with prejudice and without leave to further amend, for failure to state a claim.

Respectfully submitted,

*/s/ Ashley L. Voli*
Ashley L. Voli, Bar No. 18642
Lewis Brisbois Bisgaard & Smith LLP
100 Light Street, Suite 1300
Baltimore, Maryland 21202
Telephone: 410.525.6396
Facsimile: 410.779.3910
E-Mail: Ashley.Voli@lewisbrisbois.com
***Attorney for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of January, 2026, a copy of the foregoing *Reply in support of Motion to Dismiss Second Amended Complaint* was served via CM/ECF on:

Lawrence A. Katz, Esquire
Lento Law Group
1814 East Route 70-Suite 321
Cherry Hill, NJ 08003
*Attorneys for Plaintiff*


_/s/ Ashley L. Voli_____
Ashley L. Voli